STATE of Oklahoma, ex rel. OKLA-
HOMA BAR ASSOCIATION,
Complainant,

v.

Dennis DOWNING, Respondent.

No. SCBD 3374.

Supreme Court of Oklahoma.

Oct. 2, 1990.

Rehearing Denied Feb. 4, 1991.

John E. Douglas, Asst. Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Charles W. Whitebrook, Tulsa, for respondent.

SUMMERS, Justice.

In this Bar disciplinary proceeding Respondent Dennis Downing and the Bar Association stipulated to facts, conclusions of law, and four years' suspension from the practice of law. Downing now requests that the court disapprove the agreed four-year suspension, and suggests that a public reprimand or a six-month to one-year suspension is more appropriate. We find that the proper discipline is that stipulated and

agreed to by the parties. The agreed facts are as follows:

## Count I

The respondent was employed in 1978 to probate the estate of Allison England. Letters of Administration were not filed until 1981. From 1978 to 1981 the heirs were attempting to sell real property of the estate. "However, Respondent's neglect and lack of cooperation with the realtor and the heirs negated a potential sale resulting in the property remaining unsold and seriously depreciating in the interim. Respondent's failure to complete the probate was despite the fact that his client had requested that he do so." Stipulation No. 5. The respondent's actions resulted in a grievance being filed in 1983, and then a private reprimand by the Professional Responsibility Commission in 1985.

After receiving the private reprimand the respondent did not withdraw from representing the estate and his client did not discharge him from such representation. "However, Respondent continued to neglect the completion of the probate of the estate of Allison England." Stipulation No. 8. In 1986 the respondent received a letter terminating his services for probate of the estate. The respondent then refused to communicate with his former client and refused to forward the probate file to either his client or new counsel for the estate. The respondent's retention of the file was conditioned upon an unpaid or contested fee. A second grievance was filed against the respondent, and the respondent refused to respond to additional requests for the file from the new counsel for the estate. Counsel for the estate then notified the respondent of his intent to seek an order to compel the production of the file. The respondent finally delivered the file to the new counsel. Upon receipt of the estate file the new counsel determined that no inventory of the estate had been made and that no estate tax return had been filed.

## Count II

General Counsel for the Bar notified the respondent of the second grievance. He did not respond. The Bar sent two additional letters by certified mail to the respondent. Again, no response. "When Respondent failed to respond to any of the written notices he received, a subpoena was issued for his apearance at the Oklahoma Bar Center." Stipulation No. 18.

## Count III

In 1978 the respondent was employed by Hazel Carothers Thomas to probate the estate of her late husband, Vinnie Carothers. The primary assets of the estate were a business and five lots. Thomas was appointed administratrix of the estate in 1978, and continued to operate the business. However, upon the respondent's advice, the respondent handled all of the monies belonging to the estate. The monies of the estate were deposited into the respondent's trust account. The trust account was frequently overdrawn during 1979–1982, and "With each overdrawal of the trust account, Respondent should have had, according to his own accounting, a positive balance of funds belonging to the estate." Stipulation No. 24.

In 1982 the respondent issued a trust account check to another attorney and the check bore the notation "Carothers estate trust account [# ys], Return of loan for taxes paid 8/12/81, at 12%." Records of the probate case show that the respondent never accounted to the District Court for such disbursement and the records of the probate proceeding "do not reflect that Respondent in fact paid taxes on behalf of the estate on 8/12/81 or anytime close thereto." Stipulation No. 29.

The respondent wrote a check on his trust account and purchased two lots adjacent to the Carothers' business during the probate of the Carothers estate. The respondent purchased the lots himself, "despite Mrs. Thomas' statement to him that she desired to purchase the lots." Stipulation No. 26. The respondent maintained that he purchased the lots to protect the estate. He later conveyed the property to the estate.

In 1985 Hazel Carothers Thomas discharged the respondent and employed other counsel to wind up the estate. New counsel for the estate filed a complaint against the respondent demanding the records of the estate and an accounting of the monies. In February of 1986 the respondent filed an application for attorney fees with the court for his work on the probate of the Carothers' estate. He did not inform the court that he had paid himself attorney fees. In July of 1986 during a deposition the respondent represented that he had received no attorney fees from the estate. He later changed this representation in a 1988 deposition and admitted that he had paid himself attorney's fees totalling $7,500.00 by checks drawn on his attorney trust account. In this later deposition he also admitted that the payment was without prior approval of either the court or administratrix.

In September of 1986 the court held a hearing to account for the estate funds and the respondent testified that the estate had a balance of $12,182.79 in his trust account. However, one week prior to the hearing the account was overdrawn, had a balance of $995.49 four days prior to the hearing, and then the balance fell to $495.49 a few days after the hearing.

## Count V [1]

The respondent was employed to probate the estate of Elmer Hamilton in November of 1986. Laverta Harris was appointed personal representative of the estate on December 23, 1986. The respondent subsequently filed a Proof of Publication on December 30, 1986, and then filed nothing further in the probate. Laverta Harris offered to hire an accountant to prepare the estate tax return but the respondent "insisted that he could do it himself". On May 28, 1987, the respondent represented to Harris that the estate tax return was ready and he was sending it to the Oklahoma Tax Commission. Harris subsequently determined that no return had been filed and her brother picked up the probate file from the respondent on December 19, 1987, for delivery to Harris. Harris then hired another attorney to complete the probate and an accountant to file the estate tax return. Harris expended an additional attorney's fee of $500 and accountant's fee of $150.

## Count VI

On October 7, 1988, the Bar Association sent to the respondent a copy of a grievance filed by Laverta Harris. The respondent sent a letter to the Bar acknowleding the receipt of the Bar's letter and requested a few additional days to respond to the grievance. The respondent did not respond but resigned from the Bar and then withdrew his resignation.

## *Discipline*

The Bar Association argues that the respondent should not now be allowed to argue for a six-month to one year suspension after stipulating to a four year suspension before the Professional Responsibility Tribunal. The respondent cannot attack the correctness of the stipulated facts, *State ex rel. Oklahoma Bar Association v. Perkins,* 757 P.2d 825, 830 (Okla. 1988), and does not attempt to do so. Rather, he argues that a different discipline is warranted. The degree of discipline this court imposes upon an attorney for misconduct is based on the particular facts and circumstances of the case. We do not function in disciplinary proceedings as a reviewing tribunal, but rather, as a licensing court acting in the exercise of our exclusive original jurisdiction.[2] Neither the stipulations of the parties, nor the findings of the professional responsibility tribunal are binding insofar as the imposition of discipline is concerned. The nondelegable, constitutional responsibility to regulate both the practice and the ethics, licensure, and discipline of the practitioners of the

---

1. Count IV was dismissed by the Bar Association.

2. *In re Integration of State Bar of Oklahoma,* 185 Okl. 505, 95 P.2d 113–14 (1939).

law is solely vested in this Court.[3]

■ We regularly compare circumstances with those in previous disciplinary proceedings,[4] examine a respondent's previous record of professional behavior,[5] determine how best to serve the welfare of the public,[6] and consider the integrity of the Bar.[7] We have considered the respondent's arguments in our decision. The Bar may (and has here) put into the record by stipulation the facts material to its case. It is not prejudiced by our allowing the respondent to argue for less punishment.

■ We first address Count I. It reveals that the respondent received a private reprimand from the Professional Responsibility Commission. His acts resulting in the private reprimand are not before us for the purpose of determing whether such acts were unprofessional, but merely for the purpose of enhancing the discipline to be imposed. See, Rule 6.2 of the Rules Governing Disciplinary Proceedings. Count I also shows that even after he was privately reprimanded for his neglect of the probate he continued to ignore the estate. The respondent stipulated that his conduct after the reprimand was neglect of a legal matter. We agree. *State ex rel. Oklahoma Bar Association v. Phillips*, 786 P.2d 1242, 1245 (Okla.1990).

Then respondent's client and new counsel requested the respondent to turn over the case file. Their requests were ignored until the respondent was advised that a court order would be forthcoming and compel the release of the file. A lawyer's failure to communicate with clients and refusal to respond to their inquiries is professionally unethical. *State ex rel. Oklahoma Bar Association v. O'Brien*, 611 P.2d 650, 651 (Okla.1980); *State ex rel. Oklahoma Bar Association v. Foster*, 454 P.2d 654 (Okla. 1969).

Count III describes a probate beginning in 1978, with the client discharging the respondent seven years later, and the client discovering that the respondent had paid himself legal fees out of the estate without the approval of either the client[8] or the probate court. In filing an application for attorneys fees in the Carother's probate, respondent did not inform the court that he had previously paid himself attorney's fees from the estate. Such conduct was a misrepresentation to the court, and thus, violated DR 1–102(A)(4).

The stipulated facts in Count III also show that the respondent commingled funds. Such conduct violates DR 9–102(A) and (B). Additionally, Count III shows that when the estate should have had in excess of twelve thousand dollars in the respondent's trust account a significantly less amount was actually in the account. Money of the estate was not applied for an estate purpose. Such conduct violates Rule 1.4(b) of the Rules Governing Disciplinary Proceedings.

Count V describes a situation wherein the respondent did not file an Oklahoma estate tax return, the client hired additional counsel and an accountant to file the return, and the expenditure of an extra $650 for their fees. An attorney's representation of a client in a probate matter should not result in an injury to the estate. The probate of an estate in Oklahoma should

3. *State ex rel., Okla. Bar Assn. v. Raskin*, 642 P.2d 262, 265–66 (Okla.1982); *Tweedy v. Okla. Bar Assn.*, 624 P.2d 1049, 1052 (Okla.1981).

4. *State ex rel. Oklahoma Bar Association v. Hensley*, 560 P.2d 567, 569 (Okla.1977); *State ex rel. Oklahoma Bar Association v. Kessler*, 573 P.2d 1214, 1215 (Okla.1978).

5. In *State ex rel. Oklahoma Bar Asociation v. Lowe*, 640 P.2d 1361, 1362 (Okla.1982); *State ex rel. Oklahoma Bar Association v. Peveto*, 730 P.2d 505 (Okla.1986); *State ex rel. Oklahoma Bar Association v. Steger*, 433 P.2d 225, 227 (Okla.1967); *But see, State ex rel. Oklahoma Bar Association v. Raskin*, 642 P.2d 262 (Okla.1982), (a prior unblemished record is less important in misappropriation cases).

6. *State ex rel. Oklahoma Bar Association v. Booth*, 441 P.2d 405 (Okla.1966).

7. *State ex rel. Oklahoma Bar Association v. Raskin, supra*, at n. 3.

8. The administrator of an estate is without authority to bind the estate for a fixed sum of probate legal fees. *Matter of Estate of Bartlett*, 680 P.2d 369, 379 (Okla.1984).

not turn into another *Jarndyce and Jarndyce.*[9]

Counts II and VI show the respondent's indifference in responding to grievances as required by Rule 5.2 of the Rules Governing Disciplinary Proceedings. 5 O.S.1981 Ch. 1, App. 1–A. That rule states that "The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline." *See also, State ex rel. Oklahoma Bar Association v. Phillips, supra,* and *Oklahoma Bar Association v. McCurtain,* 767 P.2d 427 (Okla.1989). The respondent's lack of cooperation with the Bar Association violates Rule 5.2 and warrants discipline.

The facts in this proceeding are similar to those in *State ex rel. Oklahoma Bar Association v. Phillips, supra.* In *Phillips* the attorney failed to initiate a probate and was found to have neglected a legal matter, to have failed to carry out a contract of employment, to have failed to act with diligence in representing a client, to have failed to keep a client informed as to the status of a matter and requests for information, and to have failed to make reasonable efforts to expedite litigation consistent with the interests of a client. *Id.* 786 P.2d at 1245. In *Phillips* the attorney failed to respond to a grievance and a *subpoena duces tecum.* Downing neglected a legal matter, failed to professionally communicate with clients, failed to answer grievances, commingled funds, used a client's funds for a purpose other than that intended for the funds, and made a misrepresentation to a court.

The respondent submits in mitigation of discipline that "his only previous discipline has been a private reprimand" and his "age and infirmities". In *Phillips* the attorney had no previous record of attorney misconduct and received a three-year suspension.

*Id.* 786 P.2d at 1246. Downing has received a prior reprimand and is guilty of misconduct in addition to that committed by Phillips. We find no reason to alter the stipulated discipline of a four-year suspension.

IT IS THEREFORE ORDERED THAT DENNIS DOWNING BE SUSPENDED FROM THE PRACTICE OF LAW FOR FOUR YEARS. The suspension shall be effective upon the date the opinion herein becomes final.

The Bar Association's application to assess costs in the amount of $3,606.60 is granted. The respondent shall pay said costs within thirty days from the date this opinion becomes final.

LAVENDER, SIMMS, DOOLIN and KAUGER, JJ., concur.

HARGRAVE, C.J., with whom ALMA WILSON, J., joins, concurring in part, dissenting in part. "I would impose a two year suspension."

OPALA, V.C.J., concurring in part and dissenting in part. "I concur in imposing professional discipline; I dissent from the sanction imposed. I would order respondent disbarred." *State, ex rel., Okl. Bar Ass'n v. Raskin,* Okl., 642 P.2d 262, 266–267 [1982].

HODGES, J., disqualified.

---

9. A fictional suit in chancery which lasted many years until the costs depleted the estate. C. Dickens, *Bleak House* (1853). Our probate procedures require timely administration of estates. *See generally,* 58 O.S.1981 § 547 (report on the estate one year after appointment of the executor or administrator); 58 O.S.1981 § 595 (court to issue the appropriate order on the report); 58 O.S.1981 § 263 (describing the time to settle an estate which includes a going business or enterprise).