STATE of Oklahoma, ex rel., OKLA-
HOMA BAR ASSOCIATION,
Complainant,

v.

Jo Ann ASKINS, Respondent.

OBAD No. 1047.
SCBD No. 3799.

Supreme Court of Oklahoma.

June 2, 1993.

Rehearing Denied July 13, 1993.

Gloria Miller White, Asst. Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Jo Ann Askins, pro se.

SIMMS, Justice.

Respondent, Jo Ann Askins, was the subject of a formal complaint filed by the Oklahoma Bar Association, which alleged she committed acts violative of the Rules of Professional Conduct (Rules), 5 O.S.1991, Ch. 1, App. 3–A. Askins responded to the allegations, and a hearing was held before the Professional Responsibility Tribunal which filed its report containing findings of fact and conclusions of law.

We have conducted a *de novo* examination of the entire record pursuant to Rule 6.15 of the Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, and *State ex rel., Oklahoma Bar Association v. Miskovsky*, 804 P.2d 434 (Okla.1990). We find respondent's misconduct warrants a suspension of Two (2) Years from the practice of law in Oklahoma. The facts elicited during the tribunal's hearing follow.

Catherine Alfonso and David Qualls were married in 1983. In February of 1988, they

were divorced, and one year later, respondent Askins married Qualls. The question before us is whether respondent prepared and filed in the district court false documents asserting a common law marriage between Qualls and Alfonso shortly before respondent married Qualls.

In November of 1988, Qualls was arrested for breaking into Alfonso's apartment, assaulting and beating her. She brought charges for these offenses and was endorsed as a witness by the State. In December of that year, Qualls was charged with dealing illegal drugs. Alfonso had acted as a confidential informant to law enforcement officers in the drug case, and the State apparently intended for her to testify in that case as well. In all the police reports Qualls is identified as Alfonso's ex-husband.

In early December of 1989, Qualls hired respondent to defend him in the criminal cases. Alfonso did not testify in either of the cases in which she was endorsed as a witness. All but the drug charges were ultimately dismissed for failure to prosecute, primarily due to Alfonso's failure to testify at preliminary hearings. Qualls was convicted on the drug charges and sentenced to twenty-five years imprisonment.

The assistant district attorney assigned to the cases against Qualls in which Alfonso was a witness, testified that respondent hid Alfonso to keep her from testifying in the hearings and also drafted and filed false documents to support Quall's dismissal motions. The documents were sworn statements signed by Qualls and Alfonso on January 20, 1989, which stated that for a time in October of 1988, Qualls lived with Alfonso in her apartment. Each document further averred that as a result of the cohabitation, they were "still man and wife under the laws of the State of Oklahoma." The document signed by Alfonso was titled "REQUEST FOR DISMISSAL BY COMPLAINING WITNESS," and it requested that the charges brought by her against Qualls be dismissed. Qualls' document was an affidavit which he used along with Alfonso's statement to object to any testimony by his "wife" in the drug case.

Alfonso testified that respondent initially approached Alfonso and requested her to

sign the document in order to dismiss the charges against Qualls and keep her from testifying in the drug case. In return, respondent allegedly promised to take care of all of Alfonso's criminal problems. Alfonso stated that she refused to sign the document unless her mother thought it was okay, and it is undisputed that respondent drove to Tulsa to show Alfonso's mother the documents and get her approval. Alfonso and her mother both stated that they knew the affidavit was false but went along with the plan in order to protect Alfonso from Qualls and to take care of Alfonso's problems.

Respondent testified that Alfonso first contacted her and expressed a desire to "get out of going to court." Pursuant to Alfonso's request, respondent went to Alfonso's apartment where she learned that Alfonso was afraid she would get arrested if she went to court. Respondent also testified that Alfonso came up with the idea of immunity from testifying on the grounds that Qualls had lived with her.

Alfonso denied that Qualls lived with her during October of 1988, but rather a man named John Smith was living with her. Evidence corroborating the fact that Smith did live with her for some time was introduced.

In discussing the documents, respondent testified that she was unsure whether all of the elements necessary to a common law marriage were present because neither Qualls nor Alfonso indicated that they held themselves out as husband and wife or that they had the requisite "intent." However, respondent attempted to prove a common law marriage existed by introducing medical bills charged to Qualls' health insurance policy by Alfonso. The bills included drug treatment charges and emergency room charges from when Qualls assaulted Alfonso. Alfonso used the name "Catherine Alfonso–Qualls" when being admitted into the hospitals and stated that she charged the services to Qualls' insurance because he owed it to her.

On February 6, 1989, roughly two weeks after filing the documents and motions, respondent Askins married Qualls in a ceremony in Ardmore. After the wedding ceremony, Qualls moved into respondent's home and

lived there until being sentenced to prison. About the marriage, respondent testified:

"I didn't really want to get married and I kept telling him I thought that they were married. And he said she'd never testify against me for bigamy at all, she doesn't want me back and we can get a divorce. I want you to file a divorce for me.

Well, I knew that they had a real divorce. They may have had a common law relationship. If they had a common law relationship it would not—it would not exist until some court said it was a common law relationship. So therefore, any marriage I had with him would be a voidable marriage. If it was determined they were married I could annul it."

Thereafter, respondent drafted and filed a petition for divorce from Alfonso for Qualls, and on August 21, 1989, Qualls and Alfonso were granted an agreed divorce in Oklahoma County. The decree of divorce found that Alfonso and Qualls "commenced living together as man and wife on or about October 1, 1988."

Upon recommendation of counsel, Alfonso agreed to the divorce. Although Alfonso's lawyer understood that Qualls had not lived with Alfonso in October of 1988, he stated that he recommended she agree to it because he was concerned she might otherwise face perjury charges in relation to the "false" statement. Respondent did not inform the court or opposing counsel in the criminal cases in which she was representing Qualls of the fact of her marriage to Qualls. Although she did not inform Alfonso's divorce counsel of the marriage, respondent indicated that she mentioned it to the judge handling the divorce. Other facts were elicited during the hearing, but we find only the ones stated to be essential to the allegations against respondent.

## COUNT I

The tribunal noted that the evidence relating to the sworn statements was conflicting and that Alfonso was not a credible witness. However, the tribunal found that respondent's actions after filing of the documents convinced them that respondent had violated the Rules. We must agree with the tribunal's conclusion. The record indicates that respondent prepared and filed documents in the court which she knew to be false in an effort to aid her client in the defense of his criminal charges.

The fact that she married her client a few weeks after she prepared and filed documents stating that her client was married to another woman alone evinces deceit and misrepresentation. However, we also find in respondent's own testimony ample evidence of misconduct.

First, she stated that she had doubts as to whether or not a common law marriage arose in October, 1988. Regardless of whether the couple actually lived together, respondent indicated that she did not think that all of the requisite elements to a common law marriage were present. Moreover, in deciding to marry Qualls, she reasoned that a common law marriage did not exist until a court of law recognizes it as such under the laws of Oklahoma. It seems very inconsistent to say on one hand that a common law marriage did not exist until the court says it does and on the other hand prepare and file a document that says that a common law marriage existed prior to any finding by the court.

In her brief to this Court, respondent argues that the affidavit merely asserts that Alfonso obtained a divorce from Qualls and that they later cohabited and that these assertions do not establish a common law marriage. When the district court granted the second divorce and no appeal ensued, the court's findings of fact as to the existence of a common law marriage became final on the issue. Up to that time, she argues, her marriage to Qualls was voidable. Since the court found that a common law marriage existed, the affidavits were then true. At the same time those findings were made, the court granted a divorce to Qualls and under authority cited by respondent, her marriage to Qualls ripened into a common law marriage.

This argument is tenuous at best. Respondent is merely begging the question. Either the assertions in the documents were true or false. They cannot be false at one time and become true later by court decree.

Furthermore, respondent fails to recognize that whether her marriage to Qualls was voidable and whether it ripened into a common law marriage when the district court granted the divorce to Qualls has no bearing upon whether she violated the Rules of Professional Conduct. The question before us is whether respondent prepared and filed documents which she knew to be false. Rule 3.3 of the Rules of Professional Conduct provides:

"(a) A lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal;

\* \* \* \* \* \*

(4) offer evidence that the lawyer knows to be false...."

The Comment to Rule 3.3 recognizes that the matters asserted in pleadings are usually assertions made by the client or someone on the client's behalf. Hence, a lawyer is not required to have personal knowledge of the facts asserted in pleadings. However, when preparing documents and pleadings to be filed in a tribunal, a lawyer has the duty *not* to present facts that she knows are false. The Comment further notes that under some circumstances, failure to make vital disclosures is tantamount to misrepresenting the matter. We think this case presents such circumstances.

Respondent stated that she did not think all of the requisite elements for a common law marriage were present. In fact, her legal conclusion was that a common law marriage relationship did not exist until a competent court of law ruled that one did exist. Despite this understanding, respondent drafted the documents to assert that Qualls and Alfonso "are still man and wife under the laws of the State of Oklahoma." This assertion, according to respondent's own understanding, carries with it a presumption that a court had determined that such a relationship existed. For respondent to prepare a document containing such assertions while knowing that no court had yet found a common law marriage existed is to make a false statement of fact or law to a tribunal.

Respondent directed the preparation of all of the documents. Indeed, respondent signed the pleading which objected to Alfonso's testimony on the grounds "that said witness is the wife of this Defendant, ..." Clear and convincing evidence establishes that respondent's actions in preparing and filing in the district court the documents which contained false statements of fact and law was a violation of Rule 3.3(a)(1).

Moreover, respondent's failure to disclose all pertinent information regarding a common law marriage was equivalent to an "affirmative misrepresentation" to the court. *See* Comment to Rule 3.3(a)(4). Hence, respondent's preparation and filing of the misleading documents violated Rule 3.3(a)(4).

Such misrepresentation is also a violation of Rule 8.4 which reads:

"It is professional misconduct for a lawyer to:

\* \* \* \* \* \*

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; ..."

## OTHER ALLEGATIONS OF MISCONDUCT

The tribunal recommended dismissal of other charges of misconduct on the grounds that the evidence presented was insufficient to sustain the allegations. We agree that complainant failed to prove these other allegations by clear and convincing evidence, and we hereby dismiss them. *See State ex rel., Oklahoma Bar Association v. Miskovsky,* 804 P.2d 434, 437 (Okla.1990).

## DISCIPLINE

 When assessing discipline for professional misconduct, the paramount goal of this Court is to preserve and maintain public confidence in this Court and the bar as a whole. *State ex rel. Oklahoma Bar Ass'n v. Moore,* 741 P.2d 445, 448 (Okla.1987); *State ex rel. Oklahoma Bar Ass'n v. Stubblefield,* 766 P.2d 979, 985 (Okla.1988). This Court looks upon discipline as more of a means to protect the public and maintain public confidence than as a method of punishment to a member of the bar. *State ex rel. Oklahoma*

*Bar Ass'n v. Herlihy,* 827 P.2d 164 (Okla. 1991). In doing so, this Court will:

"regularly compare circumstances with those in previous disciplinary proceedings, examine a respondent's previous record of professional behavior, determine how best to serve the welfare of the public, and consider the integrity of the Bar." *State ex rel. Oklahoma Bar Ass'n v. Downing,* 804 P.2d 1120, 1123 (Okla.1990) (Citations omitted).

Respondent has practiced law in Oklahoma for thirty years. During that time, she has been disciplined twice. The first matter involved a private reprimand from the Board of Governors for a minor, unspecified violation in 1971. In the second matter, respondent received a private reprimand from the Professional Responsibility Commission in 1983 for a conflict of interest violation.

We have considered respondent's previous violations and discipline as well as respondent's many years of service, and we have reviewed other cases involving instances of misrepresentation and presentation of false statements to a court. *See, for example, Downing,* supra (attorney suspended for four years for neglecting legal matters, failing to communicate with clients, failing to respond to grievances, commingling funds and making misrepresentations to a court); *Herlihy,* supra (attorney disbarred for converting client's funds to own use and making a false statement of fact or law to a tribunal in violation of Rule 3.3(a)(1)); *Moore,* supra (attorney disbarred for misappropriation of client's funds, negligent handling of client's affairs and making fraudulent representations to a tribunal through the use of false documents); *State ex rel. Oklahoma Bar Ass'n v. Hall,* 781 P.2d 821 (Okla.1989) (attorney suspended for one year for being unprepared for trial, engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, and knowingly making a false statement of law or fact); *State ex rel. Oklahoma Bar Ass'n v. Munson,* 59 Okla.B.J. 1808 (1988) (attorney suspended for one year for neglect of legal matter and making a misrepresentation to a court); *State ex rel. Oklahoma Bar Ass'n v. Hensley,* 661 P.2d 527 (Okla.1983) (attorney disbarred for know-ingly failing to disclose facts to a court, engaging in conduct involving misrepresentation of facts to the court and engaging in conduct which was prejudicial to the administration of justice); *State ex rel. Oklahoma Bar Ass'n v. Peveto,* 620 P.2d 392 (Okla.1980) (attorney suspended for one year for making misrepresentations to his client, the district court and the Supreme court); *Stubblefield,* supra (attorney suspended for thirty days for knowingly filing false documents in a court). In each of these cases, except *Stubblefield* in which the majority of this Court determined mitigating circumstances warranted a more lenient discipline, we imposed at least one year of suspension. With this in mind, we hold that respondent's misconduct warrants a suspension from the practice of law for a period of Two (2) Years.

For the above and foregoing reasons, THIS COURT HEREBY ORDERS that respondent be suspended from the practice of law for a period of Two (2) Years. Respondent is further ordered to pay costs of the proceedings in the amount of $2,674.17 within Ninety (90) Days of the date that this opinion becomes final.

LAVENDER, V.C.J., and HARGRAVE, KAUGER, and WATT, JJ., concur.

HODGES, C.J., concurs in part, dissents in part:

I would impose the One (1) Year suspension which was the recommendations of the Professional Responsibility Tribunal.

ALMA WILSON, J., concurs in part, dissents in part, and joins HODGES, C.J.

SUMMERS, J., concurs in part, dissents in part.

OPALA, J., not participating.