**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Darrell BOLTON, Respondent.**

**SCBD No. 4062.**

Supreme Court of Oklahoma.

Oct. 3, 1995.

Allen J. Welch, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, For Complainant.

Darrell L. Bolton, Pro Se.

KAUGER, Vice Chief Justice:

The complainant, Oklahoma Bar Association (Bar Association), alleges three counts of misconduct by the respondent, Darrell Bolton (Bolton/attorney). The allegations center around the attorney's conduct in an attempted negotiation for the return of stolen property.[1] We find that: 1) the Bar Association established by clear and convincing evidence[2] that Bolton's conduct was prejudicial to the administration of justice; and 2) there is not sufficient evidence to support a finding that the attorney violated Rule 8.4(c) or committed a crime. This conduct warrants a one-year suspension and the imposition of $2,119.83 in costs.[3]

---

**1.** The Bar Association alleges violation of subsections b, c and d of Rule 8.4, Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A. Rule 8.4 provides in pertinent part:

"It is professional misconduct for a lawyer to: ... (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice ..."

In its brief in chief, the Bar Association concedes that there is not clear and convincing evidence to support a finding of a violation of Rule 1.6(b), Rules of Professional Conduct, 5 O.S.Supp.1993, Ch. 1, App. 3–A providing:

"(b) A lawyer may reveal, to the extent the lawyer reasonably believes necessary, information relating to representation of a client:

(1) to disclose the intention of the client to commit a crime and the information necessary to prevent the crime;

(2) to rectify the consequences of what the lawyer knows to be a client's criminal or fraudulent act in the commission of which the lawyer's services had been used, provided that the lawyer has first made reasonable efforts to contact the client but has been unable to do so, or that the lawyer has contacted and called upon the client to rectify such criminal or fraudulent act but the client has refused or is unable to do so;

(3) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client;

(4) or as otherwise permitted under these Rules."

**2.** Rule 6.12, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A provides in pertinent part:

"... (c) To warrant a finding against the respondent in a contested case, the charge or charges must be established by clear and convincing evidence, and at least two of the members of the Trial Panel must concur in the findings."

*State ex rel. Oklahoma Bar Ass'n v. Farrant*, 867 P.2d 1279, 1281 (Okla.1994); *State ex rel. Oklahoma Bar Ass'n v. Gasaway*, 810 P.2d 826, 830 (Okla.1991); *State ex rel. Oklahoma Bar Ass'n v. Braswell*, 663 P.2d 1228, 1232 (Okla.1983).

**3.** Rule 6.12, Rules of Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A provides in pertinent part:

"Within thirty (30) days after the conclusion of the hearing, the Trial Panel shall file with the Clerk of the Supreme Court a written report which shall contain the Trial Panel's findings of fact on all pertinent issues and conclusions of law (including a recommendation as to dis-

## FACTS

### A. Agreed Facts.

A portion of the trial panel's factual findings are supported by the parties' joint stipulations. They agree that on or about December 5, 1993, a research laboratory located in Tulsa County owned by Terry Hutter (Hutter) was burglarized. An article indicating that an award was being offered "with no questions asked" for return of the stolen property appeared in the *Sand Springs Leader* on December 9, 1993. Approximately a week later, Bolton called Hutter stating that a woman identifying herself as Ilene Woodson (Woodson) had left the article under the attorney's door and called him. Woodson claimed to know the location of the stolen property and the identity of its possessors. The woman indicated that the property would be returned for an acceptable reward. Over the next few days, the attorney engaged in several telephone conversations with Woodson and with Hutter concerning details regarding the possibility of exchanging the reward for the stolen property. During this time period, Bolton realized that Hutter was taping their telephone conversations. On approximately December 20, 1993, the attorney was confronted by Woodson and two males in his office parking lot. This meeting caused Bolton to become nervous. Bolton conferred with a Tulsa County Special District Judge who advised Bolton to withdraw from the negotiations. Bolton did so.

### B. Additional Facts Found by Trial Panel.

In addition to the stipulated facts, the trial panel found that the burglars were never identified and that, during investigations by the Tulsa Sheriff's Office and by private detectives, Woodson was neither located nor was evidence discovered of her existence. The trial panel found that Bolton's conduct involved deceit, dishonesty, fraud and misrepresentation and that the acts were prejudicial to the administration of justice. However, they did not find that the attorney received stolen property or reward money for its return, nor was Bolton suspected in the burglary.

### C. Facts Supported by the Record.

This proceeding was instituted as a Rule 6 proceeding.[4] Bolton cooperated both with the Tulsa County Sheriff's Department (Sheriff's Department) when he was interviewed by a detective and with the private investigators hired by Hutter. However, in his early conversations with Hutter, he discouraged him from contacting the authorities.[5] The investigating detective with the

---

cipline, if such is found to be indicated, and a recommendation as to whether the costs of the investigation, record and proceedings should be imposed on the respondent), and shall be accompanied by all pleadings, a transcript of the proceeding, and all exhibits offered thereat...."

Rule 6.16, Rules of Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A provides:

"The costs of investigation, the record, and disciplinary proceedings shall be advanced by the Oklahoma Bar Association (or the Professional Responsibility Commission, if provision therefor has been made in its budget). Where discipline results, the cost of the investigation, the record, and disciplinary proceedings shall be surcharged against the disciplined lawyer unless remitted in whole or in part by the Supreme Court for good cause shown. Failure of the disciplined lawyer to pay such costs within ninety (90) days after the Supreme Court's order becomes effective shall result in automatic suspension from the practice of law until further order of the Court."

4. Rule 6.1, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A provides in pertinent part:

"Formal proceedings in matters involving misconduct by lawyers shall be brought by direction of the Professional Responsibility Commission...."

5. Hutter's testimony found in the Transcript of Proceedings, May 18, 1995, pp. 26–27 provides in pertinent part:

"... Q Did you ask him (Bolton) about contacting the sheriff or law enforcement officials?
A Yes, I did. Twice I asked him about should we not contact the sheriff's department. One time on the first call. I also said, should we not call the investigators.
Q What was his response?
A All three times he used the term, I remember, 'No, it's too early.' And I also said on—about calling the sheriff's department, no, it's too early. These are real nervous people. We don't want to lose them...."

Sheriff's Department testified that the advice to exclude authorities could materially impede a police investigation.[6] The Bar Association asserts that some government property was returned to Hutter after he indicated to Bolton that the federal government would join in the investigation, but the transcript reveals that the return of the property also coincided with a private investigator's questioning of a local adolescent which Hutter had initially suspected in the burglary.[7] Although the Bar Association also argued that Bolton's activities involved criminal conduct alleging that he aided in the concealment or withholding of stolen property,[8] criminal charges were not filed by the Tulsa County District Attorney.

The attorney made a number of inconsistent statements during the course of the investigation and at the hearing before the trial panel concerning the extent of his relationship with Woodson and her physical appearance. Bolton admitted in his closing statement before the trial panel that his conduct may have been prejudicial to the administration of justice.[9]

On June 8, 1995, the trial panel issued its report. It found that: 1) Bolton did not violate Rule 1.6(b) regarding disclosures of criminal intent by a client (the Bar Association conceded this issue);[10] 2) the attorney did not violate Rule 8.4(b) (no criminal charges were filed against Bolton); 3) Bolton did make misrepresentations in violation of Rule 8.4(c); and 4) the attorney violated Rule 8.4(d) by engaging in conduct prejudicial to the administration of justice. Based on his prior disciplinary history, the trial panel recommended a two year and one day suspension and the imposition of costs.

6. Detective Palmer's testimony found in the Transcript of Proceedings, May 18, 1995, p. 100 provides in pertinent part:
 "... Q Would it have impeded the investigation for a victim to be discouraged from calling the police and authorities?
 A Yes, it would...."
 Detective Palmer's testimony found in the Transcript of Proceedings, May 18, 1995, pp. 109–10 provides in pertinent part:
 "... Q Did any of the actions you've described by Mr. Bolton, or were any of those actions deemed to be prejudicial to your investigation of this case? Any of his actions—Were any of his actions prejudicial to your investigation of this case?
 A Yes.
 Q Yes?
 A Yes.
 Q In what regard, please, sir?
 A In regard that he was contacted by Eileen Woodson and that, like I said before, that that was a big thing in my case, was very important to me. And I believe that I could have solved that case and gotten Mr. Hutter's property back to him.
 Q Do you think that these actions you observed by Mr. Bolton adversely reflect upon his honesty, trustworthiness, and fitness as an attorney?
 A Sir, as an attorney, I think—yes, sir, I do. I do...."

7. Mark Hogan's testimony found in the Transcript of Proceedings, May 18, 1995, p. 121 provides in pertinent part:
 "... Q And what do you know about the property that was marked 'NASA' in records (sic) to its retrieval?
 A There were some—some CD computer disks that had 'NASA' marked on them. And they were taken, and returned to Mr. Hutter after—they were returned to Mr. Hutter the day after I went and spoke with a young man who might have possibly been involved in the burglary...."

8. Title 21 O.S.1991 § 1713(2) provides:
 "Every person who, without making reasonable inquiry, buys, receives, conceals, withholds, or aids in concealing or withholding any property which has been stolen, embezzled, obtained by false pretense or robbery, or otherwise feloniously obtained, under such circumstances as should cause such person to make reasonable inquiry to ascertain that the person from whom such property was bought or received had the legal right to sell or deliver it shall be presumed to have bought or received such property knowing it to have been so stolen or wrongfully obtained. This presumption may, however, be rebutted by proof."

9. Bolton's statement found in the Transcript of Proceedings, May 18, 1995, p. 234 provides in pertinent part:
 "... As to the prejudicial to justice portion, I look at that and think, if anything, it would have to be something I would admit to, myself, that I possibly obstructed what could have been an investigation, or I failed to aid in a situation that might have been able to recover all of this man's property. And I feel bad about that...."

10. See note 1, supra.

THE BAR ASSOCIATION ESTAB-
LISHED BY CLEAR
AND CONVINCING EVIDENCE THAT
BOLTON'S
CONDUCT WAS
PREJUDICIAL TO THE ADMINISTRA-
TION OF JUSTICE.
THERE IS INSUFFICIENT EVIDENCE
TO SUPPORT A
FINDING THAT THE ATTORNEY VIO-
LATED RULE 8.4(c)
OR COMMITTED A CRIME.
THIS CONDUCT WARRANTS A ONE–
YEAR SUSPENSION.
COSTS OF $2,119.83 ARE ALSO IM-
POSED.

Bolton did not file an answer brief addressing the trial panel's findings or its recommendation for discipline.[11] Although the Bar Association concedes that Bolton did not violate Rule 1.6(b)[12] concerning disclosures of a client's criminal intent, it insists that it has provided clear and convincing evidence of the attorney's misrepresentation, of conduct that was prejudicial to the administration of justice, and of his criminal activity.[13]

## A. Conduct prejudicial to the administration of justice.

Before this Court may impose discipline upon an attorney, the charges must be established by clear and convincing evidence.[14] In disciplinary matters, this tribunal exercises exclusive original jurisdiction.[15] Our review is *de novo* in considering the record presented as well as recommendations for discipline.[16] The ultimate decision rests with this Court. Neither the findings of fact of the trial panel nor its view of the weight of the evidence or credibility of the witnesses bind us.[17]

The investigating officer testified before the trial panel that Bolton's request to Hutter not to contact authorities immediately and his statements concerning Woodson interfered with a successful investigation of the burglary case.[18] The most disturbing facet of this proceeding is Bolton's admission to the trial panel that he believed he may have obstructed the investigation.[19] Bolton's statement found in the Transcript of Proceedings, May 18, 1995, p. 234 provides in pertinent part:

"... As to the prejudicial to justice portion, I look at that and think, if anything, it would have to be something I would admit to, myself, that I possibly obstructed what could have been an investigation, or I failed to aid in a situation that might have been able to recover all of this man's property. And I feel bad about that...."

11. This Court examines the record of a disciplinary proceeding and the merits of a disciplinary charges against the respondent even though he or she fails to file a brief. *State ex rel. Oklahoma Bar Ass'n v. Gasaway*, 863 P.2d 1189, 1192 (Okla.1993); *State ex rel. Oklahoma Bar Ass'n v. Phillips*, 786 P.2d 1242 (Okla.1990); *State ex rel. Oklahoma Bar Ass'n v. McCurtain*, 767 P.2d 427 (Okla.1989).

12. Rule 1.6(b), Rules of Professional Conduct, 5 O.S.Supp. 1993, Ch. 1, App. 3–A, see note 1, supra.

13. Rule 8.4(c) and (d), Rules of Professional Conduct, 5 O.S. 1991, Ch. 1, App. 3–A, see note 1, supra.

14. Rule 6.12, Rules Governing Disciplinary Proceedings, 5 O.S. 1991, Ch. 1, App. 1–A, see note 2, supra; *State ex rel. Oklahoma Bar Ass'n v. Farrant*, see note 2, supra; *State ex rel. Oklahoma Bar Ass'n v. Gasaway*, see note 2, supra; *State ex rel. Oklahoma Bar Ass'n v. Braswell*, see note 2, supra.

15. *State ex rel. Oklahoma Bar Ass'n v. Farrant*, see note 2, supra; *State ex rel. Oklahoma Bar Ass'n v. Gasaway*, see note 2, supra; *State ex rel. Oklahoma Bar Ass'n v. McMillian*, 770 P.2d 892, 894 (Okla.1989).

16. *State ex rel. Oklahoma Bar Ass'n v. Farrant*, see note 2 *Id.* at 1284, supra; *State ex rel. Oklahoma Bar Ass'n v. Gasaway*, see note 2 *Id.* at 830–31, supra; *State ex rel. Oklahoma Bar Ass'n v. Stubblefield*, 766 P.2d 979, 982 (Okla.1988).

17. *State ex rel. Oklahoma Bar Ass'n v. Farrant*, see note 2 *Id.* at 1284, supra.

18. See note 6, supra.

19. See note 9, supra.

His admission supports our finding that Bolton violated subsection (d) of Rule 8.4, Rules of Professional Conduct.[20]

### B. Misrepresentation—Rule 8.4(c).

■ The Bar Association's assertion that Bolton engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of Rule 8.4(c), Rules of Professional Responsibility is based on Bolton's inconsistent statements concerning the extent of his relationship with Woodson and her physical appearance. Time and space and differing circumstances of the person perceived are such that Bolton's statements may be explained. There is insufficient evidence to support a finding that the attorney violated Rule 8.4(c).

### C. Criminal activity.

■ Although the Bar Association recognizes that there is no evidence that Bolton was in possession of any stolen property,[21] it argues that Bolton aided in the concealment of stolen property or that he withheld the property from Hutter in violation of 21 O.S. 1991 § 1713(2).[22] However, criminal charges were not filed by the Tulsa County District Attorney, and it is unclear from the record whether the decision not to charge the attorney was based on the referral of this matter to the Bar Association or because insufficient evidence existed to support the charge. The trial panel found insufficient evidence to sustain the charge of criminal conduct. Because we agree that the Bar Association failed to

establish that Bolton committed a crime, we dismiss this count.[23]

### D. Appropriate discipline.

■ Our responsibility in a disciplinary proceeding is not to punish but to inquire into and to gauge a lawyer's continued fitness to practice law, with a view to safeguarding the interest of the public, of the courts and of the legal profession.[24] Discipline is imposed to maintain these goals rather than as punishment for the lawyer's misconduct.[25] When determining discipline for attorney misconduct, we compare circumstances with those of previous disciplinary proceedings, examine the attorney's previous record of professional behavior and determine how best to serve the welfare of the public and the integrity of the bar.[26]

This Court has not considered facts similar to those presented here. However, our research reveals an instructive case decided by the Ohio Supreme Court. In *Bar Ass'n v. Sandler*, 51 Ohio St.2d 132, 5 O.O.3d 109, 364 N.E.2d 1168 (1977), an attorney offered to help with the return of a stolen vehicle for a finder's fee. The attorney was not convicted of criminal activity. However, the Ohio Court found that his activities constituted a violation of rules admonishing attorneys not to engage in conduct involving dishonesty or fraud and in assisting clients in illegal conduct. The Ohio professional board recommended an indefinite suspension of the attorney. The Supreme Court imposed a public

**20.** Rule 8.4(d), Rules of Professional Conduct, 5 O.S. 1991, Ch. 1, App. 3–A, see note 1, supra.

**21.** The Bar Association's brief in chief provides in pertinent part at p. 9:

"... Nor can it be established that the Respondent was ever in actual physical possession of the stolen property...."

**22.** Title 21 O.S. 1991 § 1713(2), see note 8, supra.

**23.** *State ex rel. Oklahoma Bar Ass'n v. Miskovsky*, 804 P.2d 434, 437 (Okla.1991). We will not impose discipline absent clear and convincing evidence of a violation of the rules governing attorneys. *State ex rel. Oklahoma Bar Ass'n v. Wilkins*, 898 P.2d 147, 150 (Okla.1995). See also, *State ex rel. Oklahoma Bar Ass'n v. Askins*, 882 P.2d 1054, 1057 (Okla.1993); *State ex rel.*

*Oklahoma Bar Ass'n v. Gasaway*, see note 11 *Id* at 1204, supra; *State ex rel. Oklahoma Bar Ass'n v. Mothershed*, 812 P.2d 382, 384 (Okla.1991).

**24.** *State ex rel. Oklahoma Bar Ass'n v. Donnelly*, 848 P.2d 543, 545 (Okla.1992); *State ex rel. Oklahoma Bar Ass'n v. Colston*, 777 P.2d 920, 925 (Okla.1989); *State ex rel. Oklahoma Bar Ass'n v. Moss*, 682 P.2d 205, 207 (Okla.1983).

**25.** *State ex rel. Oklahoma Bar Ass'n v. Farrant*, see note 2 *Id.* at 1286, supra; *State ex rel. Oklahoma Bar Ass'n v. Johnston*, 863 P.2d 1136, 1144–45 (Okla.1993); *State ex rel. Oklahoma Bar Ass'n v. Raskin*, 642 P.2d 262, 267 (Okla.1982).

**26.** *State ex rel. Oklahoma Bar Ass'n v. Farrant*, see note 2, supra; *State ex rel. Oklahoma Bar Ass'n v. Downing*, 804 P.2d 1120, 1123 (Okla. 1990).

reprimand. Unlike *Sandler,* there is no allegation that Bolton would have received any of the reward money for the return of the stolen property; and his involvement with the cause was prompted by an article in which Hutter offered a reward "no questions asked." However, Bolton's professional history [27] and the clear and convincing evidence of wrongdoing warrant discipline.

 Relying primarily upon Bolton's history of prior misconduct, the trial panel recommended a two year and one day suspension. Nevertheless, this Court is the ultimate arbiter of the appropriate sanction to be imposed for any professional infraction.[28] We impose discipline not to punish a lawyer, but to inquire into and to gauge the lawyer's continued fitness to practice law, with a view to protecting the interest of the public, of the courts and of the legal profession.[29] Although Bolton has been before this Court on two prior occasions for disciplinary infractions,[30] the facts presented are novel to bar disciplinary proceedings in Oklahoma and we recognize that Bolton's actions, in and of themselves, did not cause the economic harm suffered by Hutter.[31] We find that Bolton's prior history of misconduct and his admis-

sions here warrant a one-year suspension and an assessment of costs.

## CONCLUSION

The nondelegable, constitutional responsibility to regulate both the practice and the ethics, licensure, and discipline of the practitioners of the law is solely vested in this Court.[32] Upon a *de novo* review of the record, we find the appropriate discipline to be a one-year suspension and the payment of costs. Within thirty days of the date of this opinion, Bolton shall pay the costs in this proceeding of $2,119.83. Prompt payment is a precondition to reinstatement.

### RESPONDENT SUSPENDED;

### COSTS IMPOSED.

ALMA WILSON, C.J., and HODGES, LAVENDER, HARGRAVE and SUMMERS, JJ., concur.

SIMMS, OPALA and WATT, JJ., dissent.

WATT, Justice, with whom SIMMS and OPALA, JJ., join, dissenting:

I would suspend the respondent from the practice of law for two years and one day as

---

27. See, *State ex rel. Oklahoma Bar Ass'n v. Wolfe,* 864 P.2d 335, 338–39 (Okla.1993); *State ex rel. Oklahoma Bar Ass'n v. Cummings,* 863 P.2d 1164, 1174–75 (Okla.1993); *State ex rel. Oklahoma Bar Ass'n v. Donnelly,* 848 P.2d 543, 549 (Okla.1992). The Comment to Rule 8.3, Rules of Professional Conduct, 5 O.S. 1991, Ch. 1, App. 3–A provides in pertinent part:
 "... A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation...."
Bolton has a history of disciplinary problems. On January 14, 1983, Bolton was privately reprimanded for providing substandard representation. On May 2, 1989, the attorney was publicly censured for allowing a client to use his trust account to defraud members of the public. In the latter cause, the attorney was disciplined for neglecting a legal matter entrusted to him and for failing to maintain the integrity of the legal profession. Most recently, in *State ex rel. Oklahoma Bar Ass'n v. Bolton,* 880 P.2d 339, 346–47 (Okla.1994), Bolton was suspended for ninety days and required to pay costs for his lack of diligence and promptness in representation, failure to keep his client informed, neglecting clients by not expediting litigation consistently with their interests, and failing to comply with rules

governing disciplinary proceedings by responding untimely to the Bar Association's inquiry. In imposing this discipline, this Court considered Bolton's "past established pattern of neglect." (Emphasis in original.) *State ex rel. Oklahoma Bar Ass'n v. Bolton,* see this note *Id.* at 345, supra.

28. *State ex rel. Oklahoma Bar Ass'n v. Braswell,* see note 2, supra.

29. *State ex rel. Oklahoma Bar Ass'n v. Donnelly,* see note 24, supra; *State ex rel. Oklahoma Bar Ass'n v. Colston,* see note 24, supra; *State ex rel. Oklahoma Bar Ass'n v. Moss,* see note 24, supra.

30. See note 27, supra.

31. Economic harm is one factor considered when discipline is imposed. See, *State ex rel. Oklahoma Bar Ass'n v. Carpenter,* 863 P.2d 1123, 1130 (Okla.1993).

32. *State ex rel. Oklahoma Bar Ass'n v. Farrant,* see note 2, supra; *State ex rel. Oklahoma Bar Ass'n v. Downing,* see note 26 *Id.* at 1122, supra; *Tweedy v. Oklahoma Bar Ass'n,* 624 P.2d 1049, 1052 (Okla.1981).

recommended by the Professional Responsibility Tribunal.