STATE of Oklahoma, ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,

v.

Robert M. HERLIHY, Respondent.

OBAD No. 942.
SCBD No. 3637.

Supreme Court of Oklahoma.

Nov. 26, 1991.

Thomas C. Riesen, Asst. Gen. Counsel, Oklahoma City, for complainant.

Robert M. Herlihy, pro se.

SIMMS, Justice:

Attorney, Robert M. Herlihy, was the subject of a formal complaint filed by the Oklahoma Bar Association, which alleged that he committed acts violative of Rule 1.15 of the Rules of Professional Conduct (Conduct Rules), 5 O.S.Supp.1988, Ch. 1,

App. 3–A, and Rule 1.4 of the Rules Governing Disciplinary Proceedings (Disciplinary Rules), 5 O.S.1981, Ch. 1, App. 1–A. During the hearing on the complaint, it became apparent to the Professional Responsibility Tribunal that respondent committed other acts of professional misconduct.

Pursuant to Rule 6.15 of the Disciplinary Rules and *State ex rel. Oklahoma Bar Association v. Cantrell,* 734 P.2d 1292 (Okl.1987), we have conducted a *de novo* examination of the entire record. We find and conclude that respondent's misconduct warrants the ultimate sanction of disbarment. We first look to the misconduct alleged in the complaint.

## MISAPPROPRIATION OF FUNDS

Evidence before the panel established that Mark Haigler hired respondent to initiate a wrongful death action relating to the death of Haigler's wife. At the time of her death, Haigler's wife had four children who were living with their father, John White, in O'Fallon, Missouri. White also hired respondent to represent the four children, agreeing to have Haigler appointed guardian *ad litem* for the children in a friendly suit in order to have the district court approve a settlement.

The settlement provided for Haigler to receive $15,000.00 and the children to share $45,000.00. Respondent testified that by agreement with both Haigler and White he was to receive thirty-three percent of the gross amount of the $60,000.00 settlement, that is, $15,000.00, as his attorneys fee. However, the court order approving the settlement shows that each child was to receive $10,287.50 and respondent was only to receive $3,850.00 as an attorneys fee for his services to the children.

Moreover, on the same date as the settlement order, the court issued an Order For Trust in which the court ordered $11,250.00 to be deposited in an account for each of the four children in Boatman's Bank in O'Fallon, Missouri with $962.50 to be immediately withdrawn from each of the accounts to pay respondent for his services. Respondent received a check from the friendly suit defendants in the amount of

$60,000.00 and deposited it into his attorney trust account. He then paid Haigler $10,000.00 for his share which was $15,000.00 minus the $5,000.00 attorneys fee. Later, respondent wrote a $30,000.00 check from his attorney trust account to John White and sent it to him in Missouri. This check had a notation on it that read "as trustee for his 4 minor children," but it was not sent to a trust account in the Missouri bank per the requirements of the court's order. In fact, respondent did not assist White in establishing the trust account nor was there any indication that he provided a copy of the court order to the bank as the court directed him to do. Not only did respondent violate the conditions of the court orders, the $30,000.00 check made out to White was returned unpaid as the account had insufficient funds to cover it. White testified that he contacted respondent about the check, and respondent told him that "he was having some problems with transfers of funds in his bank."

Respondent explained to the Professional Responsibility Tribunal (trial panel) that his trust account was low on funds because he had paid numerous bills for a client and errantly relied upon a sight draft from that client in the amount of $45,000.00 which was to be deposited into his account to cover these bills as well as his attorneys fee for the work. When the draft was not honored, his trust account had insufficient funds to cover both the $30,000.00 check and all of the bills he had previously paid. He asserts that he did not wilfully misappropriate the settlement money, but rather, mistakenly relied upon the integrity of a client. He notes that he has yet to be paid by that client, and had to sell some of his own assets to pay White what he owed him. We cannot accept this explanation as an excuse for respondent's misconduct.

Respondent's trust account records indicate that the funds were deposited into his account on October 20, 1988, and that the check to White was not written until November 13, 1988. Respondent should have known by the latter date that the draft had not been honored and the funds had not been deposited into his trust account.

Nevertheless, during the month that elapsed from the deposit of the settlement proceeds, respondent not only wrote the $10,000.00 check to Haigler, but also wrote checks in the amounts of $7,000.00 to himself personally, $12,000.00 for four months of house payments on his home mortgage, $1010.00 for travelers checks for which he testified was legal business, as well as transferring $8,089.50 to a Rotan Mosle stock account.

Evidence further showed that respondent made numerous withdrawals and drafts upon the trust account for personal expenses after the check was returned. He also made several payments to his brother from the account even though at the time the brother did not have any money in the account. Respondent's bank statements show that from November, 1988 to May, 1989, there were insufficient funds in his trust account to pay the money still owed to the children. Some money was in the account, and it clearly belonged to the children, but respondent made no effort to disburse even those few funds to the children. It is clear that respondent misappropriated the funds entrusted to him.

Pursuant to repeated efforts by White to obtain the money, respondent paid all of the proceeds to White along with 10.5 percent interest. However, the first payment was made in response to a request by White for $5,880.00 to pay for medical, dental and personal expenses of the children. Respondent did not even attempt to make any further restitution until nine months later, after these disciplinary proceedings were filed. At that time, he sent a check for $1,750.00 represented to be "interest" on the money owed to the children. Full restitution was made three months later, over a year after respondent received the settlement check.

Rule 1.4(b) of the Rules Governing Disciplinary Proceedings provides:

"Where money or other property has been entrusted to any attorney for a specific purpose, he must apply it to that purpose. He may not avail himself of a counterclaim or setoff for fees against any money or other property of his client

coming into his hands for a specific purpose, and *a refusal to account for and deliver over such money or property upon demand shall be deemed a conversion.* This does not apply to the retention of money or property otherwise coming into the hands of a lawyer and upon which the lawyer has a valid lien for his services." (Emphasis added)

Subsection (c) of Rule 1.4 states that "[t]heft by conversion or otherwise of the funds of a client shall, if proved, result in disbarment." Complainant must prove the allegations of the complaint by clear and convincing evidence. Rule 6.12(c); *State of Oklahoma ex rel. Oklahoma Bar Association v. Miskovsky,* 804 P.2d 434 (Okl.1991). We find that complainant proved by clear and convincing evidence that respondent converted the funds from the settlement to his own use and he failed to deliver the funds to White upon demand.

## MISREPRESENTATION TO THE COURT

Two months after the $30,000.00 check was dishonored, and before receiving any funds from the settlement, White contacted respondent in an effort to obtain some of the settlement money for some medical, dental and personal expenses of the children. On behalf of White, respondent applied to the court to issue an order "authorizing Boatman's Bank (where said sums are on deposit on behalf of said minor children) to release the sums requested herein." The court agreed to allow the expenses and authorized the bank to release $5,880.00 from the special account to pay for these expenses. Respondent made this application knowing that a trust account had not been set up at the bank, and knowing that no funds from the settlement had been deposited at the bank per the court's Order For Trust. Respondent then wrote a check for the amount out of his attorney trust account and sent it to White. We find by clear and convincing evidence that respondent violated Rule 3.3(a)(1) which prohibits lawyers from "knowingly" making a "false statement of fact or law to a tribunal."

## OTHER ACTS OF MISCONDUCT

During the hearing, evidence was produced that respondent represented two clients, Haigler and White, without full disclosure to either of the possible conflicts of interest involved. Moreover, evidence indicated that respondent failed to adequately communicate with and advise his client, White, about the requirements of the court's order concerning the creation of a trust and the preservation of the funds for the benefit of the children.

Respondent also failed to disclose to White that the court had ordered an attorneys fee in the amount of $3,850.00, rather than the $15,000.00 contingency fee White contracted to give him. We note that to date respondent has not remitted to White the difference between the contract fee and the court order fee. In his brief to this Court, he asserts White is satisfied with the $15,000.00 fee. However, no such evidence was presented to the trial panel, nor is such evidence a mitigating factor in view of the order of the court in the friendly suit.

This additional evidence indicates that respondent may have committed acts of misconduct violative of the Rules of Professional Conduct Rule 1.4 concerning communication with clients and Rule 1.7 regarding conflicts of interest between clients. However, because respondent was unable to call White back to the witness stand to present rebuttal evidence on these charges, we decline to find that they were proven by clear and convincing evidence. Therefore, we will not consider these acts in our assessment of sanctions.

## MITIGATION

Respondent argues in mitigation that this conversion was an isolated incident, that he has made full restitution along with 10.5% interest, and that the good he has accomplished in fifteen years of service as an attorney merits some consideration. However, he recognizes that this Court sees discipline as more of a means to protect the public and insure its acceptance of the bar than as a method of punishment to a member of the bar. *State ex rel. Okla-homa Bar Ass'n v. Raskin*, 642 P.2d 262 (Okl.1982).

In *Raskin*, this Court disbarred an attorney for commingling client funds with his own personal funds even though the attorney made full restitution, had an unblemished record as an attorney, and was beset with financial difficulties. We held that these factors did not mitigate against imposing a sanction as severe as disbarment because fitness to practice law "stands terminated after a single act of dishonest dealing with client's funds." 642 P.2d at 268. *See also State ex rel. Oklahoma Bar Ass'n v. Moore*, 741 P.2d 445 (Okl.1987) (quoting *Raskin* and disbarring attorney who argued similar mitigating factors). Respondent's mitigating factors bear little weight in light of the clear violations of rules of professional responsibility.

## DISCIPLINE

Considering the aggravating factor of respondent's misrepresentation to the trial court TOGETHER with the conversion of client funds, we find that disbarment is warranted in this case, and IT IS HEREBY ORDERED AND DECREED THAT RESPONDENT BE DISBARRED and his name stricken from the roll of attorneys. Respondent is further ordered to pay costs of the proceedings in the sum of $1,212.50 within thirty (30) days of the date this opinion becomes final.

OPALA, C.J., and LAVENDER, DOOLIN, HARGRAVE, ALMA WILSON and SUMMERS, JJ., concur.

HODGES, V.C.J., concurs in result.

KAUGER, J., not participating.