OSCN Found Document:STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WINTORY

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WINTORY
2015 OK 25
Case Number: 6119
Decided: 04/28/2015
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2015 OK 25, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

STATE OF OKLAHOMA ex rel., OKLAHOMA BAR ASSOCIATION, Complainant,
v.
RICHARD M. WINTORY, Respondent.

ORIGINAL PROCEEDING FOR ATTORNEY DISCIPLINE

¶0 Pursuant to Rule 7.7 of the Oklahoma Rules Governing Disciplinary Proceedings, 5 O.S. 2011, Ch. 1, App. 1-A, Complainant Oklahoma Bar Association transmitted documentation to the Chief Justice of this Court detailing Respondent Richard M. Wintory's suspension for ninety (90) days from the practice of law in Arizona resulting from an agreement for discipline by consent. Respondent's agreed upon discipline in Arizona arose from his lack of candor concerning the nature and extent of his discussions with a confidential intermediary appointed to aid the defense in a capitol murder trial. The evidence before this Court demonstrates that: 1) Respondent had multiple contacts with a confidential intermediary appointed to aid the defense; 2) consistently misled the defense, his co-counsel, his supervisor, and the trial court concerning the nature and extent of these contacts; 3) filed documents with the trial court that failed to provide a complete picture of Respondent's contacts with the confidential intermediary; and 4) Respondent's conduct was prejudicial to the administration of justice. Upon de novo review, this Court determines that Respondent's misconduct warrants a suspension of two years and one day from the practice of law in the State of Oklahoma.

RESPONDENT SUSPENDED FROM THE PRACTICE OF LAW FOR 
TWO YEARS AND ONE DAY FROM THE EFFECTIVE DATE OF THIS OPINION

Katherine M. Ogden, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.
Mack Martin and Amber Brianne Martin, Martin Law Office, Oklahoma City, Oklahoma, for Respondent.

OPINION ON REHEARING

COMBS, V.C.J.:

¶1 Respondent Richard M. Wintory, OBA No. 11013, is an attorney licensed to practice law in the State of Oklahoma and was admitted to the Oklahoma Bar Association (OBA) on October 18, 1981. This disciplinary matter comes before the Court pursuant to Rule 7.7 of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S. 2011, Ch. 1, App. 1-A concerning imposition of reciprocal discipline for professional misconduct occurring in Arizona, where Respondent is also licensed to practice law.[1]

I.
FACTS AND PROCEDURAL HISTORY

¶2 Respondent's Arizona discipline stems from his conduct during a murder trial in which he was acting as prosecutor.[2] The trial concerned the criminal defendant's involvement in a murder for hire plot, a crime for which Arizona initially sought the death penalty. To aid defense counsel in identifying mitigation evidence, the court recommended use of a confidential intermediary (CI) to locate the defendant's biological mother. As the defendant had been adopted, neither he nor his defense counsel had knowledge of his family's mental health history or whether his mother had used drugs or alcohol during her pregnancy. This information could have been considered as mitigation evidence if the case had resulted in defendant's conviction and moved on to the penalty phase. Accordingly, a CI was appointed by the Office of Court Appointed Counsel from a list of intermediaries approved by the Arizona Supreme Court, with her pay vouchers to be reviewed and approved by defense counsel.

¶3 The CI succeeded in locating and making contact with defendant's birth mother in June of 2011. On July 1, 2011, during a contentious meeting with defense counsel, the CI refused to share the birth mother's identity because she did not believe she had authority to do so. The CI withdrew from the case on July 2, 2011, and the birth mother filed an affidavit of no contact. On July 6, 2011, defense counsel requested an ex parte hearing with the court to discuss his difficulties in obtaining information from the CI, and the hearing was scheduled for August 22, 2011.

¶4 On August 8, 2011, the CI made an attempt to contact Respondent over the phone at his office and left a message concerning her disagreement with defense counsel, who she felt was improperly pressuring her. Concerning the call, Respondent's secretary sent him a text message that morning that she received an interesting call regarding defense counsel.

¶5 Respondent returned the call on the following day, August 9, and he left a message for the CI with the CI's supervisor. The CI called the Respondent back that day, and a conversation occurred at which Respondent's paralegal was also present. Although the evidence indicates Respondent did not discuss the defense or defense strategy with the CI, it does indicate they discussed the CI's assertion that the defense was pressuring her and the CI's desire to be represented by counsel. The CI also revealed to Respondent information she had learned about the Defendant's birth mother. At least two other conversations occurred between the Respondent and CI without another witness present, prior to the August 22 hearing, where Respondent informed the CI that the State would not pay for her legal representation. The CI hired private counsel to represent her on or about August 18, 2011.

¶6 Respondent did not disclose his conversations with the CI with his co-counsel until they were on the way to the August 22, 2011, hearing. Respondent's co-counsel was left with the impression that Respondent had only spoken to the CI once. Respondent did not disclose his conversations with the CI to defense counsel or the court prior to the hearing because he did not believe he had an obligation to do so. Only at the hearing on August 22, 2011, did Respondent indicate that he had spoken with the CI, drawing concern from both counsel for the defense and the court. The CI contacted the Respondent once more on August 30, 2011, while she was represented by counsel who was apparently aware she intended to discuss once more the possibility of obtaining counsel through the State.

¶7 On September 9, 2011, the defense counsel filed a motion to recuse the prosecutor and to appoint a new confidential intermediary. The motion sought the recusal of both Respondent and the AG's office, due to Respondent's contact with the CI. At this point, it appears defense counsel was aware of only one contact between the Respondent and the CI.

¶8 Respondent apparently believed the only thing relevant to his office's consideration of the motion to recuse was whether he had received confidential information about the defense. As a result, he believed only his first conversation with the CI was substantive and relevant. The result of Respondent's conclusion was that he continuously failed to reveal that he had engaged in more than one conversation with the CI to his colleagues. Respondent and his co-counsel jointly filed a response to the motion to recuse on September 22, 2011, which respondent signed, mentioning only one conversation between the Respondent and the CI and making no mention of a witness. 

¶9 After further investigation and discussion, Respondent revised, finalized, and signed an affidavit that for the first time indicated his paralegal had witnessed the first conversation. Respondent claimed he did not remember this fact until that date. Even so, this affidavit failed to disclose his other conversations with the CI that would later be revealed by an examination of phone records.

¶10 The last-minute nature of these revelations caused some concern at the AG's office. By May 3, 2012, the AG's office removed Respondent from the case and named his co-counsel as lead counsel. On June 26, 2012, the CI's attorney provided CI's cellphone records to the defense and to the State, revealing Respondent's other phone communications with the CI. Because the records indicated phone calls that had not been detailed in Respondent's affidavit, the state filed a supplemental response to the Motion to Recuse Prosecutor in order to clarify the record. On August 6, 2012, the State filed a Notice of Withdrawal of Capitol Allegation, and the court accepted the defendant's guilty plea to second degree murder and ordered a mitigated sentence of eleven years imprisonment. One of the mitigating factors cited by the court was Respondent's apparent misconduct. The court also referred the matter to the Arizona Bar requesting that it conduct an investigation into the matter.

¶11 In an Agreement for Discipline by Consent filed on February 14, 2014, Respondent conditionally admitted to the facts and conditionally admitted that his conduct violated Rule 42, Ariz. R. Sup. Ct., specifically ER 8.4(d)[3] , in exchange for a ninety (90) day suspension from the practice of law. Respondent was suspended from the practice of law in Arizona for ninety (90) days and ordered to pay costs by a Final Judgment and Order entered on February 28, 2014. An amended Final Judgment and Order was entered on March 5, 2014. Though Respondent did not notify the OBA of the Arizona disciplinary matter by mail until March 31, 2014, he spoke with and reported his discipline to an Assistant General Counsel of the OBA by telephone on March 20, 2014, within the twenty-day period required by Rule 7.7(a).[4]

¶12 This Court issued an opinion on December 16, 2014, suspending Respondent from the practice of law in Oklahoma for two years and one day. Respondent filed a petition for rehearing on December 23, 2014, alleging that this Court violated Respondent's right to due process by suspending him from the practice of law without directing him to show cause why he should not be disciplined pursuant to Rule 7.7(b), RGDP, 5 O.S. 2011, Ch. 1, App. 1-A.

¶13 After ordering the OBA to respond and considering the issue, this Court granted Respondent's petition for rehearing by order on January 20, 2015, withdrawing the opinion and ordering Respondent to show cause why he should not be disciplined by this Court. Both parties have now had ample opportunity to respond with briefs and evidence, and they have done so. Upon examination, we agree with the OBA's assertion that the record is complete and sufficient for de novo review by this Court.

II.
JURISDICTION AND STANDARD OF REVIEW

¶14 The Supreme Court of Oklahoma possesses a nondelegable, constitutional responsibility to regulate the practice of law and the licensure, ethics, and discipline of legal practitioners in this state. State ex rel. Okla. Bar Ass'n v. Wilcox, 2014 OK 1, ¶2, 318 P.3d 1114; State ex rel. Okla. Bar Ass'n v. McArthur, 2013 OK 73, ¶4, 318 P.3d 1095; State ex rel. Okla. Bar Ass'n v. Farrant, 1994 OK 13, ¶18, 867 P.2d 1279. In disciplinary proceedings, this Court acts as a licensing court in the exercise of our exclusive original jurisdiction. Wilcox, 2014 OK 1, ¶2; State ex rel. Okla. Bar Ass'n v. Garrett, 2005 OK 91, ¶3, 127 P.3d 600; State ex rel. Okla. Bar Ass'n v. Raskin, 1982 OK 39, ¶11, 642 P.2d 262.

¶15 In disciplinary proceedings, the responsibility of this Court is not to punish, but to inquire into and gauge a lawyer's continued fitness to practice law. State ex rel. Okla. Bar Ass'n v. Layton, 2014 OK 21, ¶33, 324 P.3d 1244; State ex rel. Okla. Bar Ass'n v. Moon, 2012 OK 77, ¶26, 295 P.3d 1; Garrett, 2005 OK 91, ¶3. This inquiry is conducted with a view to safeguarding the interests of the public, the courts, and the legal profession. Wilcox, 2014 OK 1, ¶54; Moon, 2012 OK 77, ¶26; Garrett, 2005 OK 91, ¶3. Discipline should be administered fairly, but this Court recognizes that the extent of discipline must be decided on a case-by-case basis because each situation will usually involve different transgressions and different mitigating circumstances. Wilcox, 2014 OK 1, ¶54, 318 P.3d 1114; State ex rel. Okla. Bar Ass'n v. Doris, 1999 OK 94, ¶38, 991 P.2d 1015.

¶16 The documents suspending Respondent from the practice of law in Arizona for 90 days, provided to this Court by the Complainant pursuant to Rule 7.7(b), constitute the charge and are prima fascia evidence that he committed the acts described therein. Rule 7.7(b), RGDP, 5 O.S. 2011, Ch. 1, App. 1-A; State ex rel. Okla. Bar Ass'n v. Rymer, 2008 OK 50, ¶4, 187 P.3d 725; State ex rel. Okla. Bar Ass'n v. Henderson, 1999 OK 29, ¶4, 977 P.2d 1096.

¶17 Rule 7.7(b) delimits the extent to which a respondent may challenge the adjudication of another jurisdiction, and provides in pertinent part:

[t]he lawyer may submit a certified copy of transcript of the evidence taken in the trial tribunal of the other jurisdiction to support his/her claim that the finding therein was not supported by the evidence or that it does not furnish sufficient grounds for discipline in Oklahoma. The lawyer may also submit, in the interest of explaining his/her conduct or by way of mitigating the discipline which may be imposed upon him/her, a brief and/or any evidence tending to mitigate the severity of discipline. The General Counsel may respond by submission of a brief and/or any evidence supporting a recommendation of discipline.

Rule 7.7(b), RGDP, 5 O.S. 2011, Ch. 1, App. 1-A. See State ex rel. Okla. Bar Ass'n v. Patterson, 2001 OK 51, ¶6, 28 P.3d 551.

¶18 Rule 7.7 limits a respondent's attack on another jurisdiction's fact-finding to the evidence contained in a certified copy of the transcript of the other jurisdiction's proceedings. Patterson, 2001 OK 51, ¶6. Accordingly, the facts that resulted in the imposition of discipline by the other jurisdiction cannot be relitigated, but only reviewed in the context of the evidence previously presented in the other jurisdiction. State ex rel. Okla. Bar Ass'n v. Heinen, 2002 OK 81, ¶7, 60 P.3d 1018; Patterson, 2001 OK 51, ¶6.

¶19 Respondent's suspension in Arizona was the result of an agreement for discipline by consent. No adversarial hearing was held, and no certified copy of a transcript of evidence taken in the Arizona proceeding exists. Respondent is therefore bereft of any basis upon which he may challenge the prima facie evidence of misconduct provided by the Agreement for Discipline by Consent. See Patterson, 2001 OK 51, ¶6. Respondent's submissions in response to this Court's show cause order are therefore examined in the interest of explaining his conduct and/or mitigating the severity of discipline, pursuant to Rule 7.7(b), RGDP, 5 O.S. 2011, Ch. 1, App. 1-A.

III.
APPROPRIATE DISCIPLINE

¶20 There is no question that Respondent engaged in multiple conversations with a confidential intermediary appointed by the trial court to aid the defense in a capitol murder case. While the conversations themselves were not the basis for Respondent's discipline in Arizona, this Court considers them to be troubling at the very least. As his own submissions indicate, Respondent is a seasoned and decorated prosecutor. Respondent should have brought his concerns about the defense's interaction with the CI to the trial court. Rather than doing so, Respondent took it upon himself to communicate with the CI on multiple separate occasions from his office and on his cellular phone.

¶21 Further, the uncontroverted facts reveal that after others became aware of his contact with the CI, at every stage Respondent failed to be candid with the defense, the trial court, his own co-counsel, and the Arizona Attorney General's Office about the true extent of his interactions. Respondent's initial disclosure of his first conversation with the CI led everyone involved to believe it was the only one, despite other conversations having occurred prior to Respondent mentioning the first one. In response, Respondent contended that he did not disclose his conversations because he did not believe he had an obligation to do so.

¶22 On multiple occasions, Respondent failed to disclose that there was a witness to his first conversation with the CI, and his position is that he did not remember that there was one until well into the controversy. More telling, however, is that in multiple filings signed by Respondent submitted to the trial court, he failed to inform the court of the true number of interactions between himself and the CI. He failed to do this based upon his own personal determinations of what should and should not be relevant for the trial court's consideration of the defense's motion to recuse, substituting his own personal judgment for that of the court. His reasons aside, there is no question that respondent misled the defense, the trial court, his co-counsel, and the Attorney General's office, and Respondent agreed that doing so was both prejudicial to the administration of justice and worthy of suspension in Arizona.

¶23 In reciprocal disciplinary proceedings, it is within the discretion of this Court to impose the same discipline as that imposed in the other jurisdiction or one of greater or lesser severity. State ex rel. Okla. Bar Ass'n v. Knight, 2014 OK 71, ¶14, 330 P.3d 1216; State ex rel. Okla. Bar Ass'n v. Kleinsmith, 2013 OK 16, ¶4, 297 P.3d 1248; Patterson, 2001 OK 51, ¶33. This Court has imposed a wide range of discipline for misconduct involving lack of candor to a tribunal, misrepresentations, and presentation of false statements, ranging from no discipline to disbarment from the practice of law.[5] This Court has previously stated that "[h]onesty and integrity are the cornerstones of the legal profession. Nothing reflects more negatively upon the profession than deceit." State ex rel. Okla. Bar Ass'n v. Pacenza, 2006 OK 23, ¶33, 136 P.3d 616. Nowhere is this truer than where prosecutors are concerned, as they are individuals in whom the people have placed great trust.

¶24 The facts leave no doubt that in multiple filings with the trial court, Respondent failed to tell the whole truth concerning his conversations with the CI and the circumstances surrounding them. Respondent claims he failed to apprehend that his colleagues, opposing counsel, and the trial court were interested in any and all contacts he might have had with the CI and not just those Respondent personally deemed relevant.

¶25 Respondent likens his misconduct to that discussed in this Court's recent decision State ex rel. Okla. Bar Ass'n v. Layton, 2014 OK 21, 324 P.3d 1244. In Layton, this Court determined that there had been no active or intentional deceit on the part of a prosecuting attorney who failed to reveal discussions between herself and a defense witness when asked by the trial court. 2014 OK 21, ¶29. Given the circumstances, this Court declined to impose discipline. Layton , 2014 OK 21, ¶36.

¶26 However, the statements of the prosecuting attorney in Layton took place amidst the chaos of a contentious and intense trial, while the prosecutor was being verbally attacked by opposing counsel. Given the circumstances, we found it understandable that the prosecutor misunderstood the trial court's request. This Court also specifically noted the problematic behavior of everyone involved in the underlying incident. Layton , 2014 OK 21, ¶35.

¶27 There is nothing in the evidence of this case indicating Respondent was subject to anything resembling the pressures and circumstances of Layton. Respondent spoke with the CI numerous times at his own convenience. Respondent on multiple occasions, and in writing, failed to provide the trial court with a complete and accurate picture of his contact with the CI, once opposing counsel and the trial court became aware that such contact occurred.

¶28 Respondent has cooperated with Arizona's disciplinary process and with Oklahoma's. In the interest of mitigation, Respondent requests this Court consider his experience, his many accolades, and a two-decade career in Oklahoma during which Respondent was never subject to discipline by this Court.[6] There is no question that Respondent is a seasoned prosecutor. Respondent also teaches others, and presumably those students rely on him to provide an accurate picture of the obligations and duties imposed on someone who bears the burden of prosecuting crimes on behalf of the state.[7] It is precisely these facts that make it difficult for this Court to accept Respondent's characterization of the events underlying his discipline in Arizona as no more than a continuous series of misunderstandings and oversights. Our de novo review of this matter leads us to the conclusion that a suspension from the practice of law in Oklahoma for two years and one day is the appropriate discipline for Respondent's actions.

CONCLUSION

¶29 Respondent was a seasoned prosecutor by the time the events that subjected him to discipline in Arizona occurred. "The well-being of our judicial system to a large extent rises or falls on the trust the people have in those holding either prosecutorial or judicial offices." In the Matter of the Reinstatement of Page, 2004 OK 49, ¶19, 94 P.3d 80. By continuously failing to provide a complete picture to other counsel and the trial court concerning his interactions with the defense's CI, Respondent violated that trust and potentially compromised the prosecution of an alleged murderer. Respondent had multiple opportunities to provide a complete explanation and timeline of his actions to his co-counsel, the defense, and the trial court, yet he failed to do so. After Respondent was removed from the case by his superiors, his actions left his office scrambling to file a supplemental response to clarify its previous submissions after phone logs finally revealed the full extent of Respondent's interactions with the CI.

¶30 Respondent did not tell the court the whole truth. He took it upon himself to decide what the trial court needed to know to rule on a request for his recusal due to his communications with the CI. Respondent's acts were prejudicial to the administration of justice, and there is simply no excuse for his lack of honesty under the circumstances. The Respondent, Richard M. Wintory, is suspended from the practice of law in Oklahoma for two years and one day. As no costs have been requested by the OBA, no reimbursement is imposed.

RESPONDENT SUSPENDED FROM THE PRACTICE OF LAW FOR
TWO YEARS AND ONE DAY FROM THE EFFECTIVE DATE OF THIS OPINION

CONCUR: REIF, C.J., COMBS, V.C.J., KAUGER, WATT, and TAYLOR, JJ.

DISSENT: WINCHESTER, J.

NOT PARTICIPATING: EDMONDSON, COLBERT, and GURICH, JJ.

WINCHESTER, J., dissenting:

The State of Arizona suspended Mr. Wintory for 90 days. I would suspend Mr. Wintory for 1 year.

FOOTNOTES

[1] Rule 7.7, RGDP, 5 O.S. 2011, Ch. 1, App. 1-A provides:

(a) It is the duty of a lawyer licensed in Oklahoma to notify the General Counsel whenever discipline for lawyer misconduct has been imposed upon him/her in another jurisdiction, within twenty (20) days of the final order of discipline, and failure to report shall itself be grounds for discipline.

(b) When a lawyer has been adjudged guilty of misconduct in a disciplinary proceeding, except contempt proceedings, by the highest court of another State or by a Federal Court, the General Counsel of the Oklahoma Bar Association shall cause to be transmitted to the Chief Justice a certified copy of such adjudication within five (5) days of receiving such documents. The Chief Justice shall direct the lawyer to appear before the Supreme Court at a time certain, not less than ten (10) days after mailing of notice, and show cause, if any he/she has, why he/she should not be disciplined. The documents shall constitute the charge and shall be prima facie evidence the lawyer committed the acts therein described. The lawyer may submit a certified copy of transcript of the evidence taken in the trial tribunal of the other jurisdiction to support his/her claim that the finding therein was not supported by the evidence or that it does not furnish sufficient grounds for discipline in Oklahoma. The lawyer may also submit, in the interest of explaining his/her conduct or by way of mitigating the discipline which may be imposed upon him/her, a brief and/or any evidence tending to mitigate the severity of discipline. The General Counsel may respond by submission of a brief and/or any evidence supporting a recommendation of discipline.

[2] At the time of the trial, Respondent was an Assistant Attorney General but had brought the case with him from the Pima County Attorney's Office when he joined the office of the Attorney General.

[3] Arizona Ethics Rule 8.4, 17 A.A.R.S.Sup.Ct.Rules, Rule 42 is substantially similar to its Oklahoma counterpart, Rule 8.4, Oklahoma Rules of Professional Conduct, 5 O.S. 2011, ch. 1, App. 3-A, which provides:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice;

(e) state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law; or

(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law.

[4] Rule 7.7(a) requires an attorney to notify the General Counsel of the OBA within twenty (20) days of the final order of discipline when discipline for misconduct has been imposed upon the lawyer in another jurisdiction. Rule 7.7, RGDP, 5 O.S. 2011, Ch. 1, App. 1-A. Although Respondent did not submit copies of the Agreement For Discipline by Consent and the Amended Final Judgment and Order to the OBA until March 31, 2014, he notified the OBA by phone within the time period required by Rule 7.7(a). This Court has previously stated that although Rule 7.7(a) does not require any particular mechanism for conveying the information, the better practice is to inform the General Counsel in writing of discipline by another jurisdiction. State ex rel. Okla. Bar Ass'n v. Stewart, 2003 OK 13, ¶16, 71 P.3d 1. Even so, where an attorney asserts the OBA was notified orally and there is no evidence that this did not occur within the twenty-day period, this Court has held the requirements of Rule 7.7(a) were satisfied. State ex rel. Okla. Bar Ass'n v. Stewart, 2003 OK 13, ¶16. Respondent and the OBA assert that Respondent should be credited with timely notifying the Office of the General Counsel of his Arizona discipline. We agree.

[5] State ex rel. Okla. Bar Ass'n v. Layton, 2014 OK 21, 324 P.3d 1244 (No discipline imposed for attorney's failure to be candid with trial court); State ex rel. Okla. Bar Ass'n v. Gassaway, 2008 OK 60, 196 P.3d 495 (Attorney disbarred for misconduct including false representations to judges and attempts to trade legal work for sexual favors); State ex rel. Okla. Bar Ass'n v. Johnston, 1993 OK 91, 863 P.2d 1136 (Attorney suspended for four months for conduct including false statements to the court); State ex rel. Okla. Bar Ass'n v. Askins, 1993 OK 78, 882 P.2d 1054 (Attorney suspended for two years for preparing and filing false documents ); State ex rel. Okla. Bar Ass'n v. Downing, 1993 OK 44, 863 P.2d 1111 (Attorney disbarred for unauthorized practice of law and for dishonesty concerning his unauthorized practice); State ex rel. Okla. Bar Ass'n v. Herlihy, 1991 OK 123, 827 P.2d 164 (Attorney disbarred for conversion of client funds and misrepresentation to the trial court); State ex rel. Okla. Bar Ass'n v. Stubblefield, 1988 OK 141, 766 P.2d 979 (Attorney suspended for 30 days for intentionally misrepresenting facts to the court); State ex rel. Okla. Bar Ass'n v. Moore, 1987 OK 21, 741 P.2d 445 (Attorney disbarred for forging checks and falsifying official documents); State ex rel. Okla. Bar Ass'n v. Moss, 1983 OK 104, 682 P.2d 205 (Attorney disbarred for knowingly submitting false affidavit in an attempt to avoid discipline); State ex rel. Oklahoma Bar Ass'n v. Hensley, 1983 OK 32, 661 P.2d 527 (Attorney disbarred for affirmative misrepresentation of facts to the trial court); State ex rel. Okla. Bar Ass'n v. Peveto, 1980 OK 182, 620 P.2d 392 (Attorney suspended for one year for misrepresentations to clients).

[6] Respondent's Response to Complainant's Reply to Show Cause Order and Submission in Mitigation of Discipline provides in part:

In addition to Respondent's direct submissions in support of mitigation, this Court may also consider Respondent's two-decade career in Oklahoma. While prosecuting some of Oklahoma's most difficult and terrible cases, including securing the convictions of defendants after others had been wrongfully convicted and then exonerated, Respondent was never disciplined by this Court. He never had to be; his record is that of an excellent prosecutor who continuously learned from both mistakes and triumphs and worked tirelessly to see justice done.

While Respondent is correct that he has never been subjected to discipline by this Court, the Court of Criminal Appeals has more than once had occasion to cast doubt on Respondent's characterization of his career as an Oklahoma prosecutor. See Mitchell v. Oklahoma, 2006 OK CR 20, ¶103, 136 P.3d 671 (Death sentence reversed based in part upon Respondent's "serious and potentially prejudicial misconduct."); Stouffer v. State, 2006 OK CR 46, 147 P.3d 245 (Characterizing Respondent's questioning as "more akin to prosecutorial misconduct" and "extremely improper and irrelevant.").

[7] Agreement for Discipline by Consent, p. 17.






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 2006 OK CR 20, 136 P.3d 671, MITCHELL v. STATE
Discussed
 2006 OK CR 46, 147 P.3d 245, STOUFFER v. STATE
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1987 OK 21, 741 P.2d 445, State ex rel. Oklahoma Bar Ass'n v. Moore
Discussed
 1988 OK 141, 766 P.2d 979, State ex rel. Oklahoma Bar Ass'n v. Stubblefield
Discussed
 1991 OK 123, 827 P.2d 164, 62 OBJ 3589, State ex rel. Oklahoma Bar Ass'n v. Herlihy
Discussed
 1993 OK 44, 863 P.2d 1111, 64 OBJ 1193, State ex rel. Oklahoma Bar Ass'n v. Downing
Discussed
 1993 OK 78, 882 P.2d 1054, 64 OBJ 1853, State ex rel. Oklahoma Bar Ass'n v. Askins
Discussed
 1993 OK 91, 863 P.2d 1136, 64 OBJ 2082, State ex rel. Oklahoma Bar Ass'n v. Johnston
Discussed
 1994 OK 13, 867 P.2d 1279, 65 OBJ 459, State ex rel. Oklahoma Bar Assn. v. Farrant
Discussed
 2001 OK 51, 28 P.3d 551, 72 OBJ 1921, STATE ex. rel. OKLAHOMA BAR ASSN. v. PATTERSON
Discussed at Length
 2002 OK 81, 60 P.3d 1018, STATE ex. rel. OKLAHOMA BAR ASS'N v. HEINEN
Discussed
 2003 OK 13, 71 P.3d 1, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. STEWART
Discussed at Length
 2004 OK 49, 94 P.3d 80, IN THE MATTER OF THE REINSTATEMENT OF PAGE
Discussed
 2005 OK 91, 127 P.3d 600, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. GARRETT
Discussed at Length
 2006 OK 23, 136 P.3d 616, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. PACENZA
Discussed
 2008 OK 50, 187 P.3d 725, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. RYMER
Discussed
 2008 OK 60, 196 P.3d 495, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. GASSAWAY
Discussed
 2012 OK 77, 295 P.3d 1, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MOON
Discussed at Length
 2013 OK 16, 297 P.3d 1248, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. KLEINSMITH
Discussed
 2013 OK 73, 318 P.3d 1095, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. McARTHUR
Discussed
 2014 OK 1, 318 P.3d 1114, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WILCOX
Discussed at Length
 2014 OK 21, 324 P.3d 1244, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. LAYTON
Discussed at Length
 2014 OK 71, 330 P.3d 1216, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. KNIGHT
Discussed
 1980 OK 182, 620 P.2d 392, State ex rel. Oklahoma Bar Ass'n v. Peveto
Discussed
 1999 OK 94, 991 P.2d 1015, 70 OBJ 3622, State ex. rel. Oklahoma Bar Association v. Doris
Discussed
 1982 OK 39, 642 P.2d 262, State, ex rel., Oklahoma Bar Ass'n v. Raskin
Discussed
 1999 OK 29, 977 P.2d 1096, 70 OBJ 1134, State ex. rel. Oklahoma Bar Association v. Henderson
Discussed
 1983 OK 32, 661 P.2d 527, State ex rel. Oklahoma Bar Ass'n v. Hensley
Discussed
 1983 OK 104, 682 P.2d 205, State ex rel. Oklahoma Bar Ass'n v. Moss
Discussed