STATE ex rel. OKLAHOMA BAR ASSOCIATION v. LOWERY
2023 OK 54
Case Number: SCBD-7399
Decided: 05/09/2023
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2023 OK 54, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

STATE OF OKLAHOMA ex rel., OKLAHOMA BAR ASSOCIATION, Complainant,
v.
MARGARET JEAN LOWERY, Respondent.

BAR DISCIPLINARY PROCEEDING 

¶0 Complainant, State of Oklahoma ex rel. Oklahoma Bar Association, initiated this disciplinary proceeding pursuant to the reciprocal discipline Rule 7.7 of the Rules Governing Disciplinary Proceedings, Okla. Stat. tit. 5, ch. 1, app. 1--A after the Illinois Supreme Court issued an order suspending Respondent for thirty days and requiring successful completion of the Attorney Registration and Disciplinary Commission Seminar within one year. Complainant recommends Respondent be suspended from the practice of law for thirty days. We suspend Respondent from the practice of law for thirty days with reinstatement conditioned upon Respondent's completion of the professional seminar ordered by the Illinois Supreme Court.

RESPONDENT'S REQUEST FOR HEARING IS DENIED;
RESPONDENT SUSPENDED FOR THIRTY DAYS;
REINSTATEMENT CONDITIONED UPON COMPLETION OF THE 
PROFESSIONAL SEMINAR ORDERED BY ILLINOIS SUPREME COURT. 

Tracy Nester, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

Dan Murdock, Oklahoma City, Oklahoma, for Respondent.

ROWE, V.C.J.:

¶1 Respondent Margaret Jean Lowery was licensed to practice law in 1987. Her Oklahoma Bar membership is in good standing. In January 2023, Respondent was disciplined by the Illinois Supreme Court for making false statements about a judge and for knowingly making false statements during the disciplinary proceeding. The Illinois Supreme Court found Respondent violated 8.1(a), 8.2(a), and 8.4(c), Illinois Rules of Professional Conduct.In the Matter of Margaret Jean Lowery, M.R. 031506, 2023.

¶2 Subsequently, Complainant, State of Oklahoma ex rel. Oklahoma Bar Association, initiated disciplinary proceedings pursuant to Rule 7.7, Rules Governing Disciplinary Proceedings ("RGDP"), 5 O.S.2011 ch. 1, app. 1-A, concerning the imposition of reciprocal discipline for professional misconduct that occurred in Illinois. This Court directed Respondent to show cause why a final order of discipline should not be imposed. Respondent objected to discipline and requested a hearing. Complainant recommended that the imposed discipline be consistent with the discipline imposed by the Illinois Supreme Court, effective on the date of this Court's decision.

STANDARD OF REVIEW

¶3 This Court has the responsibility to regulate the practice of law and the licensure, ethics, and discipline of legal practitioners in this State. State ex rel. Okla. Bar Ass'n v. Wintory, 2015 OK 25350 P.3d 131State ex rel. Okla. Bar Ass'n v. Bellamy, 2012 OK 20273 P.3d 56

BACKGROUND

¶4 Respondent has been licensed to practice law in Oklahoma since 1987 and licensed in Illinois since 2000. The events that give rise to the present case began in Illinois in 2018 when Respondent became involved in a political campaign opposing Judge Andrew Gleeson's attempt to retain his judicial position as a judge of the Twentieth Judicial Circuit Court of the State of Illinois.

¶5 Prior to seeking retention, Judge Gleeson reported then Judge Duebbert to the Judicial Inquiry Board for providing allegedly deceptive responses to the police in a murder investigation. In 2018, Judge Dubbert and others opposed Judge Gleeson's retention. Respondent's opposition to Judge Gleeson's retention stemmed from her views surrounding the investigation into Judge Dubbert. Respondent joined an anti-retention group in the summer of 2018.

¶6 The anti-retention group determined a Facebook page and website should be set up to communicate its collective opinions regarding Judge Gleeson. Respondent was experienced with purchasing domain names and creating websites for herself and agreed to set up the website for the anti-retention group. In September 2018, Respondent contacted GoDaddy and created firetheliarjudge.com ("Fire the Liar website"). Respondent used a personal email and her personal PayPal account to create and pay for the website.

¶7 Respondent designed and built the Fire the Liar website using a GoDaddy builder, which entailed creating a structure where text or images could later be posted. Respondent uploaded basic information on the website, such as details about the anti-retention group and links to articles about Judge Gleeson. However, Respondent testified that she did not post any of the Fire the Liar website's content beyond basic information. According to Respondent, anyone who had the access log-in information to the Fire the Liar website could post content on the website. At one point, Respondent was concerned about what content could be posted and inquired with a GoDaddy representative if she could, as the website administrator, review posts before they were published on the website. The representative informed her the platform was not capable of that function.

¶8 Respondent communicated with GoDaddy customer service regarding the website at least four separate times in September and October 2018. During those conversations, Respondent used the alias name of Madeline Dinmont (she had a Dinmont Terrier named Madeline) and used a disposable phone. During one of the conversations with a GoDaddy customer service representative about the Fire the Liar website, though she did not mention Judge Gleeson by name, Respondent said "I will tell you how evil it is. They've attempted to set up another judge of a different political party for murder if that tells you anything. . . And this is the guy who orchestrated it."

¶9 Respondent also purchased a second domain name, firejudgegleeson.com ("Fire Judge Gleeson website") with the purpose of connecting the two domains together so that upon visiting the Fire Judge Gleeson website, a user would automatically be redirected to Fire the Liar website. Respondent was actively involved with both websites from September 2018 until early October 2018.

¶10 In addition to the websites, Respondent gave the anti-retention group access to a Facebook page she no longer used. In October 2018, statements on the Facebook page accused Judge Gleeson of being part of a racist white supremacy group, including the Klu Klux Klan. Respondent testified that she did not post those statements. Respondent closed down the websites and Facebook page in November 2018, following the election.

PROCEDURAL HISTORY

¶11 In July 2019, an investigation was opened and a hearing was held before the Illinois Attorney Registration and Disciplinary Commission ("ARDC"). Following the hearing, the Administrator filed a four-count Complaint alleging that Respondent made statements which she knew were false or with reckless disregard for their truth about a judge's qualification or integrity and made false statements to the Hearing Board. The charges concerned posts on the Fire the Liar website and Facebook page, the comments she made during a telephone conversation with customer service, and Respondent's statements regarding her involvement in the matter.

¶12 During the hearing, Respondent was questioned about her involvement with the Fire the Liar website and Facebook page. Respondent denied knowing who set up the website and claimed she did not control or manage the website. Ultimately, she testified that her role was very limited. Yet, she admitted she was asked to help set up the website for the anti-retention group.

¶13 Following the hearing, the Hearing Board's Report and Recommendation concluded that the Administrator failed to prove by clear and convincing evidence that Respondent was the one who created the posts on the website or Facebook page. In addition, the Hearing Board did not find Respondent's statement during the telephone conversation with the GoDaddy customer service representative violated Rule 8.2(a), IRPC, because the statement was made in a very limited context, unrelated to any court proceeding, and did not identify anyone by name. However, the Hearing Board found that Respondent knowingly made false statements during the disciplinary hearing in violation of 8.1(a) and 8.4(c).

¶14 The Hearing Board recommended a suspension of sixty days and that Respondent complete the ARDC's Professionalism Seminar within one year after the Court's final order of discipline. Respondent appealed, challenging the Hearing Board's findings on all counts and asked that the complaint be dismissed. The Administrator appealed the Hearing Board's finding that Respondent did not make false statements impugning a judge's integrity in violation of Rule 8.2(a), IRPC.

¶15 The Review Board rejected Respondent's propositions and affirmed the Hearing Board's findings. The Review Board also found Respondent's statement with the GoDaddy customer service representative violated Rule 8.2(a), IRPC. The Review Board recommended that Respondent be suspended for thirty days and complete the ARDC's Professionalism Seminar within one year.

¶16 Respondent appealed to the Illinois Supreme Court. On January 17, 2023, the Illinois Supreme Court suspended Respondent for thirty days with the requirement she complete the ARDC's professional seminar within one year. In compliance with Rule 7.7(a), RGDP,

¶17 On January 24, 2023, we requested that Respondent show cause in writing no later than February 14, 2023 as to why a final order of discipline should not be imposed. Complainant mailed a copy of the formal Complaint to Respondent via certified mail to her official roster address and to Respondent's Oklahoma counsel. Both mailings were received. Complainant submitted proof of service of the formal Complaint on February 3, 2023. On March 1, 2023, Complainant filed its Recommendation of Discipline with this Court, to which Complainant recommended the discipline to be imposed is consistent with that imposed by the Illinois Supreme Court.

¶18 On March 2, 2023, Respondent's counsel entered his appearance and that same day filed a Motion for Extension of Time in Which to File Objection to Rule 7.7 Notice, requesting an additional fourteen days to file an objection, which we granted. On March 21, 2023, Respondent filed for a second time extension, which we granted. On April 6, 2023, Respondent filed her objection to the Rule 7.7 Notice and requested a hearing.

¶19 Respondent contends discipline is not warranted for several reasons, including but not limited to: violation of the First Amendment of the United States Constitution; violation of due process; disparate treatment because she is a female Republican; retaliation against her because she is a whistleblower; harassment; improper standard of review; improper burden of proof; and a flawed appellate review board because it included a non-attorney. Respondent's objection does not include evidence supporting her claims. Complainant filed a response on April 20, 2023 noting an evidentiary hearing is unnecessary, affirming its original recommendation for discipline.

¶20 Respondent's suspension in Illinois "shall constitute the charge and shall be prima facie evidence the lawyer committed the acts therein." Rule 7.7(c), RGDP. Pursuant to Rule 7.7(b), RGDP, evidence may only be submitted to support a claim that the discipline imposed by the other jurisdiction was "not supported by the evidence or that it does not furnish sufficient grounds for discipline in Oklahoma." The purpose of an evidentiary hearing in a reciprocal disciplinary proceeding is not to relitigate the facts resulting in the imposition of discipline, but only to review whether the evidence does not support the discipline. State ex rel. Okla. Bar Ass'n v. Auer, 2016 OK 75376 P.3d 243

DISCUSSION 

¶21 The Illinois Supreme Court found Respondent violated Rules 8.1(a), 8.2(a), and 8.4(c), of the Illinois Rules of Professional Conduct. Based upon the prima facie evidence contained in the Supreme Court of Illinois Order and Mandate of Suspension and supporting documents, Respondent's professional misconduct is also violative of Rules 8.1(a), 8.2(a), and 8.4(c), Oklahoma Rules of Professional Conduct, 5 O.S. 2011, ch. 1, app. 3-A and Rule 1.3, RGDP.

¶22 Rule 8.1(a) provides "a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not: (a) knowingly make a false statement of material fact." Rule 8.1(a), ORPC. Rule 8.4(c) provides, "[i]t is professional misconduct for a lawyer to: . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Rule 8.4(c), ORPC. According to the record, Respondent falsely testified: that she did not set up the website; did not control or manage the website; that she did not know who set up the website; that she did not know when the website was set up; that other people set up the website; that she did not know what email address was used to set up the website; and that her role was limited to helping other people set up the website. According to the Hearing Board and Review Board, none of these statements were true. The Review Board also concluded that Respondent's false statements were material, such that the statements sought to inaccurately minimize her involvement with the website. By making these material false statements during a disciplinary proceeding, Respondent engaged in conduct that was dishonest and fraudulent, thus violating Rules 8.1(a) and 8.4(c), ORPC.

¶23 Rule 8.2(a) provides "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office." Rule 8.2(a), ORPC. The Hearing Board originally determined Respondent did not violate 8.2(a), IRPC, but the Review Board found otherwise. During a phone call with a GoDaddy customer service representative, Respondent made statements about Judge Gleeson that she knew were false. The Hearing Board determined that because Judge Gleeson was not explicitly identified, Rule 8.2(a), IRPC, was not violated. The Review Board disagreed and found that there was sufficient evidence at the disciplinary hearing to identify Judge Gleeson during the conversation. Respondent made statements she knew were false about a judge that had the potential to tarnish the legal system's reputation and undermine the public's confidence in the administration of justice, violating Rule 8.2(a), ORPC.

¶24 Although Complainant did not raise the issue, we find that Respondent's conduct also implicates Rule 8.4(a), ORPC. Rule 8.4(a) prohibits a lawyer from violating or attempting to violate the Rules of Professional Conduct.

¶25 While Respondent provided a response with her objections, her response lacks any support for her contentions. Rule 7.7(b) provides

The lawyer may in the interest of explaining his or her conduct, or by way of mitigating the discipline to be imposed upon him or her, submit a brief and/or any evidence tending to mitigate the severity of discipline. The lawyer may submit a certified copy of any transcripts of the evidence taken during disciplinary proceedings in the other jurisdiction to support his/her claim that the finding therein was not supported by the evidence or that it does not furnish sufficient grounds for discipline in Oklahoma.

Respondent raises concerns with this Court regarding the questioning during the disciplinary proceeding, yet failed to provide a copy of the transcript to support her claim. In addition, Respondent's response fails to address the statement she made regarding Judge Gleeson or her involvement with the creation and management of the website, which is the core for the underlying disciplinary charges. Respondent's response does not sway us to impose a less severe level of discipline than the discipline imposed in Illinois.

¶26 Based on the aforementioned, we find that Respondent engaged in misconduct in violation of Rules 8.1(a), 8.2(a), 8.4(a), and 8.4(c), ORPC, and Rule 1.3, RGDP.

AGGRAVATING AND MITIGATING CIRCUMSTANCES

¶27 Our goals in bar disciplinary matters are to protect the interests of the public and preserve the integrity of the legal profession, not to punish attorneys. State ex rel. Okla. Bar Ass'n v. Kinsey, 2009 OK 31State ex rel. Okla. Bar Ass'n v. Stewart, 2003 OK 1371 P.3d 1

¶28 In mitigation, Respondent promptly notified Complainant of her imposed discipline in Illinois, and filed a response detailing her objections as to why a final order of discipline should not be imposed. Respondent has no prior discipline history in either Illinois or Oklahoma and her license is currently in good standing in Oklahoma. She has been active in bar association work and civic organizations; provided pro bono services; contributed articles to professional journals; and taught undergraduate and graduate level courses. Respondent's character witness described her as a very honest person, who has always dealt with others in a respectful matter.

¶29 In aggravation, the Hearing Board and Review Board considered the fact that Respondent facilitated individuals gaining access to the Fire the Liar website despite her concern that individuals might post inappropriate content. Although she reached out to GoDaddy to see if there was a way to monitor the content, she did not take corrective action until after the election. In addition, Respondent sat on the Illinois Character and Fitness Committee and the Oklahoma Professional Responsibility Commission; thus, her service should have given Respondent greater awareness of the need to comply with ethical obligations, particularly in disciplinary proceedings.

DISCIPLINE

¶30 "In a reciprocal disciplinary proceeding, it is within this [C]ourt's discretion to visit the same discipline as that imposed in the other jurisdiction or one of greater or lesser severity." State ex rel. Okla. Bar Ass'n v. Hyde, 2017 OK 59397 P.3d 1286State ex rel. Okla. Bar Ass'n v. Patterson, 2001 OK 5128 P.3d 551Id. Crafting the appropriate discipline requires consideration of the goals of discipline set in the context and accompanying complexities of each case. Id.

¶31 Complainant recommends Respondent be suspended for thirty days. Our jurisprudence presents no case that duplicates the unique circumstances involved here. In State ex rel. Okla. Bar Ass'n v. Brown, 1989 OK 75State ex rel. Okla. Bar Ass'n v. Besly, 2006 OK 18136 P.3d 590

¶32 In regards to an attorney impugning the integrity of a judge, in State ex rel. Okla. Bar Ass'n v. Wilcox, 2009 OK 81227 P.3d 642

¶33 We recognize that the above cases differ in that the disciplined attorneys engaged in additional misconduct unlike Respondent's misconduct. However, we also recognize that Respondent's conduct warrants some level of discipline. The record clearly establishes that Respondent knowingly made false statements about Judge Gleeson and that Respondent knowingly made false statements concerning her involvement with the Fire the Liar website during the disciplinary hearing.

¶34 In light of Respondent's objection to the Rule 7.7 Notice, she had an opportunity to provide this Court with explanatory and mitigating information demonstrating that Illinois' imposed discipline does not correspond with her misconduct and should not be duplicated by this Court. However, although many objections were presented, nothing within the filed response leads us to confidently conclude that Illinois' imposed discipline was unwarranted. Based upon Respondent's knowingly made false statements concerning her involvement with the websites during the disciplinary hearing and her knowingly made false statements about Judge Gleeson, we find Illinois' imposed discipline was warranted and we impose the same.

CONCLUSION 

¶35 After considering evidence of Respondent's misconduct, the aggravating and mitigating factors, and the range of discipline reflected in the case law, we find that suspension of thirty days is appropriate. Respondent's reinstatement is conditioned upon her completion of the professional seminar ordered by the Illinois Supreme Court.

RESPONDENT'S REQUEST FOR HEARING IS DENIED;
RESPONDENT SUSPENDED FOR THIRTY DAYS;
REINSTATEMENT CONDITIONED UPON COMPLETION OF THE 
PROFESSIONAL SEMINAR ORDERED BY ILLINOIS SUPREME COURT. 

Kane, C.J., Rowe, V.C.J., Kauger, Winchester, Edmondson, Gurich and Kuehn, JJ., concur;

Combs and Darby, JJ., concur in part; dissent in part.

Combs, J., with whom Darby, J., joins, concurring in part; dissenting in part: 

"I would suspend Respondent for thirty days from this order." 

FOOTNOTES

if the Court deems such hearing(s) necessary. Rule 7.7(d), RGDP. (Emphasis added).

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
....

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.